Tusko et ux. *v.* Lynett et al., Appellants.

Argued April 20, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank M. Walsh,* for appellants.

*James G. McDonough,* with him *Clarence J. Wing,* for appellees.

OPINION BY MR. JUSTICE STERN, May 27, 1937:

The legally significant facts in this case—selecting from the testimony those most favorable to plaintiffs—may be summarized as follows: Defendants' truck, manned by a driver and helper, delivered bundles of newspapers daily to various places in the vicinity of Scranton. A newsboy named Tatko operated his own independent delivery route in the village of Richmondale, and it was his custom each day to obtain his papers from defendants' truck when the latter arrived at Richmondale Road. Joseph Tusko, a fourteen-year-old schoolboy, became a partner of Tatko, who had gone off to a CCC camp, and deliveries were thereafter made to him. The arrangement was, when the truck came to Richmondale Road, for the driver to sound the horn as a signal announcing the truck's arrival. If Tusko was not in school at the time, he would come to receive his bundle; otherwise the papers were to be left by the helper on the porch of a mine engine house near by, where Tusko would later call for them. On October 29, 1935, the day before the happening of the accident which is the subject of the present suit, Joseph's brother Thomas, aged eight, went for the papers in the absence of Joseph, who later reprimanded Thomas sharply and told him not to do this again. On the following day—that of the accident—Joseph told Thomas "to be sure he does not go down today for the papers, like he went the day before; and he said he wouldn't go down."

On October 30 the truck, as usual, came north on the highway to Richmondale Road and the driver sounded the horn. Joseph happened to be attending an entertainment in his school. Thomas·Tusko and another little boy were playing together about 200 or more feet away across a small creek. When the horn sounded Thomas and his companion came running across the

creek and the westerly side of the highway to the truck, which had come to a stop on the easterly half of the 16-foot road, its left wheels close to the center. Thomas clambered into the rear of the truck and, with the consent of the helper, took the bundle of papers intended for his brother. He then started back across the roadway but as he emerged from behind the truck was struck and killed by another truck coming south on the highway at a fast rate of speed. During all this time defendants' truck remained stationary, with the driver and helper seated in the cab.

The present action is by Thomas Tusko's parents to recover damages for his death. The trial resulted in a verdict in their favor of $5,000, reduced by the court to $3,500. Defendants' motion for judgment n. o. v. was overruled, from which ruling this appeal was taken.

The theory of plaintiffs' case is that the crew of defendants' truck were negligent in inviting or luring Thomas into a place of peril, and, more especially, in not protecting him after he came to the truck and was allowed or directed to take the bundle of papers for delivery to his brother. In our opinion it is not necessary to pass upon the legal soundness of this contention, because, even if the circumstances of the case would permit a jury to infer negligence on the part of the crew, there remains as a conclusive barrier to plaintiffs' right of recovery a lack of legal responsibility on the part of defendants. Were it conceded that the injured boy was an invitee as to the servants, he was nevertheless only a trespasser as to the master. It is true, of course, that an employer's instructions as to the manner in which his services shall be performed will not relieve him from liability for the employe's tort in violating such instructions, and if, therefore, what the crew of the truck are alleged to have done in summoning the boy and giving him the papers was within the scope of their authority, defendants would be liable for their negligence in connection with such acts. But here it was the duty of

the helper to deliver the papers to the different carriers; that was the very purpose of his employment. He had no right to entrust that duty, or any part of it, to another—in this case Thomas Tusko—and make defendants responsible for harm resulting to such person. In *Byrne v. Pittsburgh Brewing Co.,* 259 Pa. 357, the driver of a truck requested a friend to ride with him in order to point out the direction in which he should go. The friend was injured on the ride in consequence of a defect in the truck. The court held that there was no emergency which created a necessity for the friend's assistance, and applied the familiar rule that a servant has no authority to call on another to help him in his master's business unless there is a necessity for such action. The court said (p. 363): "At the furthest, the assistance rendered by the plaintiff in this case may be construed as serving the convenience or pleasure of the driver; but this comes far short of a necessity calling for assistance." A similar ruling was made in *D'Allesandro v. Bentivoglia,* 285 Pa. 72. In *Hartigan v. Public Ledger,* 291 Pa. 588, the driver of a newspaper delivery truck allowed a nine-year-old newsboy occasionally to ride on the truck in order to help him in making deliveries of the papers. The boy was injured by the driver's negligence. It was held that the employer was not responsible because the employe acted beyond the scope of his authority in utilizing the boy's services. In *Zavodnick v. Rose,* 297 Pa. 86, it was held that before the owner of a delivery truck could be held liable for injury to one whom the driver permitted to ride thereon, authority from the owner for such permission had to be shown. See also *Corbin v. George,* 308 Pa. 201. It is clear that the crew of the truck in the present case had no authority, express or implied, to employ additional assistance in the performance of their duties. Delivering the papers was not a task of a nature to require, as a necessary incident, the employment of outside help. No emergency situation existed which justified

defendants' employes in enlisting the aid of this boy to deliver the papers to his brother or to place them on the engine house porch. At best it was an act on the part of the crew of the truck merely for their own convenience and in relief of their own duty, and even if it was their negligence which contributed to the happening of the fatal accident, they alone were legally responsible.

Judgment reversed and here entered for defendants.