8809. MADDEN *v.* MITCHELL AUTOMOBILE CO. *et al.*

The evidence supported the material allegations of the petition, and the court erred in granting a nonsuit.

DECIDED OCTOBER 31, 1917.

Action for damages; from Walker superior court—Judge Tarver. February 21, 1917.

T. F. Madden filed suit in attachment against S. L. Mitchell Automobile Co., S. L. Mitchell, and Lookout Mountain & Chattanooga Sight-seeing Company. Briefly stated, the material allegations of the petition are as follows: That the defendants were, on May 15, 1914, operating motor trucks over a described route, for sight-seeing parties; that at a certain point on said route stood a large monument, known as the Iowa Monument, and at this

point is a playground where a number of children, between the ages of six and fifteen years, collect and play during the day, and that defendants and their agents were fully aware of said fact; that the motor cars of the defendants, in passing this playground, were accustomed to move at a slow rate of speed, namely, from three to six miles an hour, and that the drivers of defendants' cars had been accustomed to permit the children to board and ride the cars while passing this point at said slow rate of speed, such custom having been a continuous one for some months prior to May 15, 1914; that it was the duty of defendants' agents operating its cars, being aware of this custom, to anticipate that the children would attempt to board the cars at this point, and their said agents were under a duty to take proper measures to prevent injury to these children. The petition further alleged that plaintiff's son, of the age of eleven years, together with several companions, was at said playground on the forenoon of May 15, 1914; that one of defendants' cars, in charge of its agent, Burns, entered the playground running very slowly, said agent knowing at the time that children were in the habit of jumping upon the steps or running-board of the car at this point; that upon entering the playground the car was running at a speed of about three miles an hour, and soon after it entered the ground petitioner's son, together with three others, ran out to jump upon the running-board and ride, two of the boys running across the road in front of the car and boarding the left side of the car, while plaintiff's son and another attempted to swing on the running-board on the right side; that petitioner's son missed the running-board of the car, was hurled under it, and the right wheel of the car ran over him, inflicting injuries from which he soon died. It is alleged that the driver of the car, just at the time petitioner's son undertook to board the same, applied more power to the machine, causing it to move faster, and that by such sudden motion of the car the boy was tripped up and killed. The petition further alleged that deceased was lacking in experience and discretion, and was incapable of appreciating the danger of undertaking to board the car while in motion; that Burns, the driver, had full control and management of the car, and knew that deceased had on previous occasions mounted and ridden on his car at this point, as he was undertaking to do at this time; that divers other boys of about

the age of the deceased had prior to this time, with the knowledge of Burns and without objection from him, jumped upon his car at this point, when going in this direction, and that said driver was aware of the lack of discretion and experience on their part, and their inability to appreciate the danger in their conduct in so boarding the car. The driver was charged to be negligent in that, although he knew of the children's custom of boarding his car at said point, and had often so permitted them to do, and though he knew their lack of experience and realized the danger they incurred in so boarding the car, and knew, or ought to have known, that deceased was attempting to board his car, he on this occasion failed to ascertain whether any of the children had boarded, or were attempting to board, his car as he passed the playground, but instead of so ascertaining he speeded up his car at this point, contrary to his usual custom. There were further allegations as to the earnings of deceased, his contribution to the support of plaintiff and his family, and the attachment proceedings theretofore had in aid of this suit.

At the conclusion of the plaintiff's evidence on the trial the court, on motion, granted a nonsuit; to which the plaintiff excepted. The evidence adduced at the trial is stated in the opinion.

*C. R. Jones, O. N. Chambers, R. M. W. Glenn, W. M. Henry,* for plaintiff.

*Allison, Lynch & Phillips, Rosser & Shaw,* for defendant.

HARWELL, J. (After stating the foregoing facts.) The principles of law announced by the court in *Ashworth* v. *Southern Railway Co.,* 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592), are applicable to the instant case. The *Ashworth* case has been followed by a number of decisions since rendered by the Supreme Court of Georgia. The cases cited by the defendant in error from other jurisdictions we do not think conflict with the ruling in the *Ashworth* case. In Ziegman *v.* Beebee, 97 Neb. 689 (151 N. W. 167, L. R. A. 1915D, 536), one of the cases cited by defendant in error, the court said: "The question would be different if the driver was aware that the children were congregating on and about [the wagon] and were liable to be injured if not warned away, and this is the principle upon which some cases have been decided." At any rate, the ruling announced by the Supreme Court in the *Ashworth* case is the law of this State. In that case it was held:

"Notwithstanding the plaintiff was an infant of immature years, he was wrongfully upon the running-board of the company's engine, and was therefore a trespasser. The only duty which a railroad company owes a trespasser is not to injure him wantonly or willfully; and ordinarily this rule imposes upon the company simply the duty of taking proper precautions after the presence of a trespasser in a position of peril has been discovered. It will not do, however, to lay this down as an absolutely invariable rule. A railroad company may, by its own acts and conduct, impose upon itself the duty of anticipating the presence of a trespasser in such a position. . . A railroad can not, in all cases, relieve itself from liability to a trespasser by showing merely that its servants and employees did not know of the presence of the trespasser, but in some cases it must go further and show that there were no circumstances from which an ordinarily prudent person would have had reason to anticipate his presence. . . Railroad companies may not be bound to anticipate that children will be allured by passing trains and attempt to board and ride upon them. But when the right of way of a railroad company extends through a place used as a playground by a number of children of ages varying from six to fifteen years, and when these children are accustomed continuously, every time the train enters the playground when they are upon it, to swarm upon the train and ride to the limits of the playground, and when the employees of the company know of this custom and make no objection to it, the company is bound to carry the burden which such a knowledge and tacit permission imposes, and this burden would require the company to comply with the demands of ordinary care for the prevention of injury to the children." While the deceased in the instant case is to be treated as a trespasser, the question to be determined by this court is whether or not the evidence submitted by the plaintiff, tested by the rules announced in the *Ashworth* case, supra, made such a case of wanton and willful negligence by defendant's servant in charge of the car that the case should have been submitted to the jury, and whether, therefore, the court erred in granting a nonsuit.

Questions of negligence are peculiarly for the jury. *Wynn* v. *City & Suburban Ry.*, 91 *Ga.* 344 (7) (17 S. E. 649). Nonsuit should not be granted if there is any evidence to support the al-

legations of the petition. Civil Code (1910), § 5573. The evidence in this case supports the allegations of the petition. The testimony of the plaintiff's witnesses, briefly stated, showed the following facts: that this sight-seeing car was run from Chattanooga, through Rossville, to Chickamauga National Park, and carried passengers for hire to points of interest along this route; that Burns, the driver, was in entire charge of the operation of the car, and his duties were to collect fares and operate the car; that at a place called the Iowa Monument the driver always checked the speed of his car and delivered a "spiel" to the passengers, explaining this point of interest; that this place was a playground for children, especially for certain boys who congregated here and played ball; that it was the regular custom of these children, when the car "slowed up" at this point, to mount the running-boards of the sight-seeing car which ran lengthwise of the car on both sides, about a foot above the ground; that this custom extended over a period of several years, and was well known to Burns, the driver who was in charge of the car on this occasion. One of the witnesses testified: "It was the habit of us boys to ride when we pleased at this particular place; that had been our habit and custom about two years. Mr. Burns and the other drivers made no objection to our doing that. When I made these trips in these cars we got out there—I did—at the Park and opened the gates for them. The driver, Mr. Burns, and the others knew we opened the gates; it was an accommodation to him and the passengers." The testimony further showed that these boys would ride upon the car to a certain monument called the Wilder Monument, and there get off with the driver and passengers to visit this point of interest, and then ride to a certain place on the return of the car, where they all got off. The evidence tended to show that this custom was well known to the driver and was tacitly consented to by him; that on the day when deceased met his death one of his companions had already mounted the car as it approached the Iowa Monument; that as it approached, the boys were there in the road for the purpose of swinging it, as was their custom; that one of them ran across the road about fifteen feet in front of the car to the left-hand side of the car, and that the driver was looking ahead and must have seen this boy; that two of the boys were in the road on the right-hand side for the purpose of swinging the

car, one of them being the deceased; that they were in this position some twenty-six feet in front of the car, so that the driver, in looking ahead, must have seen them as well as the boy who ran across in front of the car; that as the car approached the place of the Iowa Monument, where these boys were congregated in the road, it was running about four miles an hour; that the deceased attempted to mount the running-board of the car, and in doing this fell under the wheels and was run over and killed; that just as the deceased mounted the car, or attempted to mount it, the driver "speeded up" the car, and this sudden increase in speed caused deceased to fall. One of the witnesses testified: "He speeded up his car to keep us off; he hadn't been used to speeding up his car, and I just assume that was the reason."

We have carefully examined the record in this case, and in our opinion the testimony of the plaintiff's witnesses tended to support the allegations of the petition, and certainly made a case for submission to a jury. It is for the jury to say whether these boys were accustomed to congregate at this point, and whether or not the custom of these boys to mount this sight-seeing car was so regular and continuous and was so well known to this particular driver as to make it his duty to anticipate, when he saw the boys there, that they would do as they had been regularly in the habit of doing—mount or attempt to mount his car when it decreased its speed at this point, and to take the necessary precautions for their safety. It is for the jury to say whether or not on this occasion the presence of these boys for this purpose was known to the driver. It is for the jury to say whether or not the driver's negligent conduct under the circumstances amounted to wantonness and willfulness and was the proximate cause of the boy's death. Whether or not the deceased's failure to exercise due care—that is, such care as his age and capacity fitted him to exercise under the circumstances surrounding him at the time—would preclude recovery, is also a question to be passed on by the jury, under appropriate instructions from the court. The court erred in granting a nonsuit; and the judgment is

*Reversed. Broyles, P. J., and Bloodworth, J., concur.*