## BEALE & STRAYHORN *v.* CLAYBORN.*

(Division A. Feb. 28, 1929.)

[120 So. 812. No. 27727.]

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, section 661, p. 554, n. 72; Motor Vehicles, 42CJ, section 806, p. 1058, n. 67; On liability of master for injury to volunteer, see annotation in 13 L. R. A. (N. S.) 561; 16 L. R. A. (N. S.) 963; 43 L. R. A. (N. S.) 179, 187; L. R. A. 1915F, 1125; 18 R. C. L. 578; 6 R. C. L. Supp. 1076.

*Amis, Dunn & Snow,* for appellants.

684

*Reilly & Parker,* for appellee.

686

Cook, J. The appellee, Abraham Clayborn, instituted this suit in the circuit court of Lauderdale county against the Royal Feed & Milling Company, a corporation, Beale & Strayhorn, a copartnership, and Jessie R. Waller, and Jim Digman, seeking to recover damages for personal injuries alleged to have been sustained by him in a collision between an automobile owned and operated by the said Royal Feed & Milling Company, and driven by its employee, the defendant Jessie R. Waller, and an ambulance owned and operated by the said Beale & Strayhorn, and driven by one of its employees, the defendant Jim Digman. At the trial of the cause the court granted a peremptory instruction to the jury to return a verdict for the defendant Royal Feed & Milling Company and Jessie R. Waller, but submitted the cause to the jury as against the defendants Beale & Strayhorn and Jim Digman, and a verdict was rendered against these defendants for the sum of five thousand dollars; and from the judgment entered in pursuance of this verdict, the defendants Beale & Strayhorn prosecuted this appeal.

The declaration averred that the appellants were engaged as partners in the business of operating ambulances, and in so doing used a number of vehicles and employed many persons, and among others the defendant Jim Digman; that on the occasion when the appellee was injured the said Digman was, in line with his employment, making a trip in an ambulance belonging to the appellants, and that he requested the appellee to go with him in said ambulance to assist in the duties to be performed by him for the appellants, as he had a right to do under the authority of his employment; that in obedience to this request the appellee entered the said ambulance, and rode therein until it was wrecked at the intersection of Sixth street and Twenty-First avenue in the city of Meridian. The negligence charged was that the ambulance was quoted at an unlawful and dangerous rate of speed by the driver, Digman; that the said driver negligently failed to keep the vehicle under easy and proper control, and negligently failed to keep a proper and sufficient lookout ahead; and that as a result of the reckless and dangerous rate of speed at which the ambulance was driven, and the failure of the driver to keep a lookout, and the negligence of the defendant Waller in operating the automobile of the defendant Royal Feed & Milling Company, the two vehicles collided, thereby causing the ambulance to overturn and injure the appellee in the manner and to the extent particularly described in the declaration. To this declaration the appellants filed a plea of the general issue and gave notice thereunder of certain defensive matter which is not necessary to here set forth.

The appellee called as a witness in his behalf the defendant Jim Digman, who testified that he was employed by the appellants to drive the ambulance in making emergency calls, and that he was in charge of the ambulance at the time of the accident; that he had received an emer-

gency call to take the ambulance to the scene of an automobile accident, and he requested one George Welsh, a bystander, to go with him to assist in such work as might be necessary at the scene of the accident; that it was frequently necessary for him to have assistance in removing the dead or injured from the scene of an accident; that he had authority to employ or call temporary help on such occasions, and he frequently requested bystanders to assist him in his work in operating the ambulance; and that the appellants had knowledge of this practice on his part. He further testified that on the occasion of the accident to the appellee he did not request any person other than Welsh to go with him; that he did not know the appellee was in the ambulance until after the wreck; and that he had ridden in it from the appellants' place of business to the scene of the accident without the witness' request, permission, knowledge, or consent; and he further denied that he had at any time in the past requested the appellee to ride in the ambulance or assist him in responding to any emergency calls.

The appellee testified that on the day he was injured he was at the appellants' place of business when an emergency ambulance call was received by Jim Digman, who operated the ambulance, and Digman then requested him to go with him and assist him in the ambulance service; that prior to that time he had been frequently requested by Digman to go with him on such calls, and, when he did so, that he assisted Digman in placing the injured or sick person or persons in the ambulance; that it was a regular practice for Digman to call bystanders to go with him to assist in the work necessary to be done; and that on the occasion in question he was requested to go and was going with Digman for the purpose of assisting him in the work necessary to be done in response to an emergency call to aid certain persons

who had been injured. Henry Strayhorn, one of the appellants, testified that when responding to emergency calls, Jim Digman, the driver of the ambulance, had authority to, and whenever necessary did, call bystanders to assist him in the work necessary to be done.

At the conclusion of the testimony for the appellee, the appellants moved the court to exclude the evidence as against them and direct a verdict in their favor for the reason, among others, that the appellee was a voluntary servant assisting in the business of appellants in operating the ambulance for the purpose of rendering aid and assistance to persons said to have been injured; and that if it were true that the driver Digman was guilty of negligence in operating the ambulance, it was the negligence of a fellow-servant of the appellee, and therefore he could not recover against the principals, the appellants. This motion was overruled, and at the conclusion of the testimony the appellants again requested a peremptory instruction, which was refused, and the refusal of this instruction is now assigned as error.

The only witnesses who knew anything about the appellee's connection with the ambulance in responding to the particular emergency call were the appellee himself, and Digman and Welsh, who were offered as witnesses by the appellee, and on this point the appellee's testimony was in direct conflict with that of Digman and Welsh. If the testimony of the witnesses Digman and Welsh is accepted, the appellee was a mere trespasser, and the only duty the appellants owed to him was not to willfully or wantonly injure him, and the testimony was not sufficient to support a finding of willful wrong, or such gross negligence as amounts to a willful wrong on the part of Digman in the operation of the ambulance.

The testimony is undisputed that the driver of the ambulance had authority to employ or accept such assistance as was essentially necessary to perform the

duties incident to an emergency call for the services of an ambulance, and according to the testimony of the appellee himself he was voluntarily riding in the ambulance, at the request of the servant of the appellants, for the purpose of rendering to this servant such assistance as was necessary to the full and proper performance of the duties incident to such emergency. The question that arises, then, is whether by so doing the appellee became the fellow-servant of the driver of the ambulance. . On this question the authorities are not entirely harmonious; but we think that reason and the weight of authority is in support of the view that, under such circumstances, the appellee became the fellow servant of the driver of the ambulance.

In 39 C. J., p. 554, this doctrine is announced, in the following language: "One who, having no interest in the work, voluntarily assists the servant of another, whether at the request of such servant or not, and is injured by the negligence or misconduct of such servant, stands in the position of a fellow-servant with such employee and cannot recover from the master, since he can impose no greater liability on the master than a hired servant; the master owes to him no higher duty than to a trespasser, and is liable only for his own or his servant's willful or wanton negligence."

In the case of *Wischam* v. *Rickards,* 136 Pa. 109, 20 A. 532, 10 L. R. A. 97, 20 Am. St. Rep. 900, it was held that: "A servant cannot, by any act of his, impose upon his master a higher liability for negligence than the master is under to the servant himself; and one who assists such servant in his duties at the servant's request only, can have no other or different remedy against the master, for negligence, than the servant had." And: "That the person assisting can have no higher rights than the servant in the performance of whose duties he joins has, is not so much because he is a volunteer, as because he

makes himself one of a class, who, as against the master, have no right of recovery for the negligent acts or conduct of each other. Wherefore, as one who is engaged in the service of a common master, and in a common employment, cannot recover against the master for the negligence of a fellow-servant, whether paid for his service or not, so, if a stranger join at the request of a servant and is injured, he is in no better position than a mere volunteer.''

In the case of *Osborne* v. *Knox & Lincoln R. R. Co.*, 68 Me. 49, 28 Am. Rep. 16, it was held that a servant cannot recover for an injury incurred in assisting a fellow-servant, either voluntarily, or on the request of such servant, and that: ''A person who voluntarily assists the servant of another, in a particular emergency, cannot recover from the master for an injury caused by the negligence or misconduct of such servant; he can impose no greater duty on the master than a hired servant.''

In the cases of *Eason* v. *S. & E. T. Ry. Co.*, 65 Tex. 577, 57 Am. Rep. 606, and *Mayton* v. *T. & P. R. R. Co.*, 63 Tex. 77, 51 Am. Rep. 637, it was held that a person volunteering to assist a servant of the defendant became the fellow-servant of the regular employee engaged in a particular service and could not recover for the negligence of such servant; while the supreme court of West Virginia, in the case of *Knicely* v. *W. Va. M. R. Co.*, 64 W. Va. 278, 61 S. E. 811, 17 L. R. A. (N. S.) 370, approved the following statement of the rule: '' 'One who, without being requested or authorized by the master to do so, assists his servants to serve him, is deemed to be so far their fellow-servant as to limit the liability of the master to him, even though he would not be regarded as a servant so far as to make the master liable to strangers for his negligence. This is so where such assistance is given by the request of the servants; and it can make no difference in his favor that the person rendering such as-

sistance does so unasked or even against the will of the master or of the servants, or both. In such case he may be a trespasser; and if so, he diminishes his right to recover for an injury received under such circumstances by his contributory fault. On the other hand, if his assistance is rendered at the request of the master or his authorized agent, he becomes for the time a servant in every legal sense, with the benefits as well as the burdens of that position.' " See, also, *Brooks* v. *Central Sainte Jeanne,* 228 U. S. 688, 33 S. Ct. 700, 57 L. Ed. 1025, for a discussion of this question.

Under the appellee's own testimony, he had no personal interest in the duties to be performed, and he voluntarily engaged in the services upon the request of a servant of the appellants, and by so doing he brought himself within the class of fellow-servants who, as against the master, cannot recover for the negligent acts or conduct of each other.

It follows from the views herein expressed that the peremptory instruction requested by the appellants should have been granted, and therefore that the judgment of the court below will be reversed, and judgment will be entered here for the appellants.

*Reversed, and judgment for the appellants.*