Jacamino, Appellant, v. Harrison Motor Freight Company.

Argued October 27, 1938.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES,
JJ.

*Harry M. Penneys,* for appellant.

*Philip Werner Amram,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY CUNNINGHAM, J., April 12, 1939:

An action in trespass was brought by Matilda Jaca-
mino, mother of Frank Jacamino, to recover damages
for the death of her son, who was accidentally killed

while assisting in unloading one of defendant's trucks, then in charge of its servant.

Defendant is a corporation engaged in the business of transporting freight by motor truck, and having its office in Newark, N. J. On a number of occasions previous to September 30, 1936, the day of the fatal accident, one of its drivers, Boutilette, had hauled loads of empty storage battery cases, each weighing about twelve pounds and made by Hood Manufacturing Company of Boston, from points outside the state and delivered them to the plant of the Security Storage Battery Company, located at Salmon and Pickwick Streets in the City of Philadelphia.

The trial, before BROWN, JR., J., and a jury, resulted in a verdict for plaintiff in the sum of $2,000, but defendant's motion for judgment in its favor, n. o. v., was granted and plaintiff now appeals.

Defendant neither filed an affidavit of defense nor offered any evidence at the trial. Two assignments of error have been filed; the first is based upon an alleged trial error, consisting of the refusal of the trial judge to admit as evidence a paragraph in plaintiff's statement of claim; and the second upon the action of the court below in entering judgment for the defendant notwithstanding the verdict.

With relation to the first assignment, the record shows that after it had been established by offers from the statement of claim and admissions of counsel for defendant that it was the owner of the motor and trailer in which the accident occurred and that the same was then being operated by one of its drivers and upon its business, counsel for plaintiff specifically offered in evidence the amended sixth paragraph, reading:

"Par. 6. Plaintiff avers that at the above time and place, the said Frank Jacamino was alive and lawfully within the said trailer of the defendant company, having been invited thereon by the operator of the de-

fendant's motor truck and trailer, who in doing so was acting within the scope of his employment and with the knowledge and consent of the defendant, to assist in unloading the said batteries and battery cases."

Upon the sustaining of the objection of counsel for defendant to the admission of the paragraph as offered, the offer was restricted to the portion which alleged, in effect, that "what the driver did was within the scope of his employment." The learned trial judge excluded the offer, as restricted, upon the ground that the "scope and extent of the agency [was] a matter of proof [aliunde]." Plaintiff argues this paragraph of her statement was admissible by reason of Section 13 of the Practice Act of May 14, 1915, P. L. 483, as amended, (12 PS §412) providing, so far as here relevant: "In actions of trespass the averments, in the statement, of the person by whom the act was committed, the agency or employment of such person, the ownership or possession of the vehicle, machinery, property or instrumentality involved, and all similar averments, if not denied, shall be taken to be admitted in accordance with section six; the averments of the other facts on which the plaintiff relies to establish liability, and averments relating to damages claimed, or their amount, need not be answered or denied, but shall be deemed to be put in issue in all cases unless expressly admitted."

Defendant's failure to file an affidavit admitted its ownership of the truck and that the tractor and trailer were being operated by its employee, and upon its business, at the time of the accident: *Flanigan v. McLean,* 267 Pa. 553, 110 A. 370; *McGlinchey v. Steigerwald,* 73 Pa. Superior Ct. 520; and *Myers and Myers v. Pfeiffer,* 84 Pa. Superior Ct. 505.

But the above averments that defendant's driver had authority to invite the decedent upon the truck to assist in unloading it, and that he was so invited with the knowledge and consent of defendant, are not the

kind of averments that are deemed to be admitted by the failure of a defendant to file an affidavit. The case is ruled on this point by *Flanigan v. McLean,* supra, and *Kirk v. Showell, Fryer & Co. Inc.,* 276 Pa. 587, 120 A. 670. In the latter, the averment in the seventh paragraph of plaintiff's statement that the unloading of a bulky package from the truck required two men, and defendant's driver had been in the habit of securing the assistance of one, Damiano, to help him, was held properly excluded. The first assignment is accordingly overruled.

The substantial feature of this case is the measure and extent of the duty of the master, the owner of the truck, to the decedent while upon it with, at least, the consent of its servant, the driver, and that must be ascertained by an examination of the evidence in the light most favorable to plaintiff and giving her the benefit of every inference fairly deducible therefrom.

When so read, these facts appear from the record: On the occasion of each trip to the plant of the battery company it was the custom of Boutilette to procure the assistance of one or more of a group of six or seven boys in the neighborhood to help him unload the battery cases. He paid each boy fifty or seventy-five cents for his services, although there was never any distinct understanding between him and the boys as to the amount they would receive. Plaintiff's son, Frank Jacamino, nineteen years of age, was one of this group and had helped defendant's driver unload on an average of three days a week for about four months preceding the accident.

On the day of the accident, Boutilette, accompanied by Frank Jacamino, arrived at the Security Storage Battery Company plant about noon. The empty hard rubber battery cases were stacked in the front of the trailer; they occupied only about four feet of its space, the remaining twenty-one feet between the cases and the tail gate being empty. A heavy wooden gate, about

eight feet square, made of cross pieces of two-inch lumber and weighing over one hundred pounds, had as usual been placed upright in the body of the truck to hold the stacked battery cases in place.

It was a wet day and Boutilette began maneuvering the truck forward and backward in the street in order to bring its rear end flush with the plant doors so that it might be unloaded without anyone getting wet. During the maneuvering Jacamino stood in the body of the trailer, while Boutilette operated the motor; he was last seen standing in the truck with his back to the cases and facing its tailboard. During what was intended to be the final forward movement, Kaselman, an employee of the Security Battery Company, who was waiting to help with the unloading, heard an unusually forceful application of the air brakes and a crash inside the truck body. The gate and cases fell on Jacamino, inflicting injuries from which he died on the way to the hospital.

The trial judge, as shown by his able opinion supporting the judgment for defendant, granted the motion upon two grounds: First, the absence of any evidence supporting plaintiff's averment that her son had been invited upon the truck, to assist in unloading it, by the driver, "who in doing so was acting within the scope of his employment and with the knowledge and consent of the defendant"; and second, the lack of proof of the ordinary negligence charged in the statement—improper and careless loading and securing in place of the battery cases and causing the truck "to be brought to a stop with a sudden and violent jolt and jar."

As there is not the slightest suggestion of any wilful or wanton injury to the decedent, we need not concern ourselves with the presence or absence of proof of ordinary negligence, unless there is evidence that the status of the decedent, with respect to the defendant, rose higher than that of a bare licensee, volunteer or trespasser: *Hughes v. Murdoch Storage & Transfer Co.*

*(No. 1)*, 269 Pa. 222, 112 A. 111; *Hartigan et al. v. Public Ledger*, 291 Pa. 588, 140 A. 524; *Zavodnick v. A. Rose & Son*, 297 Pa. 86, 146 A. 455; *Stefan v. New Process Laundry Co. Inc.*, 323 Pa. 373, 185 A. 734; *Collins v. Rosenberg*, 106 Pa. Superior Ct. 269, 161 A. 580.

In this connection it should be noted that we are not here dealing with the nature and extent of the duty of an owner of land to a trespasser thereon, nor with the kind of conduct which might subject an employed driver to liability for injury to a rider upon a vehicle under his control. It is here sought to impose liability upon an absent owner for the negligence of its chauffeur. See *Stefan v. New Process Laundry Co. Inc.*, supra, and Eldredge "Tort Liability to Trespassers," (1937), 12 Temple Law Quarterly, pages 32, 46.

In *Hughes v. Murdoch Storage & Transfer Co. (No. 1)*, supra, a fourteen year old boy was held a trespasser and recovery denied where the driver of a storage truck permitted the boy to ride on the truck and the latter was hurt when the truck started before he had completely alighted therefrom. Mr. Justice KEPHART (now Chief Justice) stated (page 223): "To sustain a recovery, under these circumstances, it should appear that the act of the driver, in permitting the boy to ride, was fairly within the scope of his employment: [citing cases]. If he so acted, the master owed a duty through his agent to see that no negligent act should happen that might injure the invitee. ...... [The test is], was the invitation or its consequences in furtherance of the master's business, so that it might be said to be impliedly within his authority?"

Recovery was denied in the Hartigan case, supra, where a nine year old newsboy was injured descending from the defendant's newspaper delivery truck which jolted and threw him under the rear wheel. The driver was expressly forbidden to permit persons to ride on the truck. The boy often rode on the truck to assist

the driver in making deliveries, but received no compensation for what he did. In *Collins v. Rosenberg*, supra, we held that a newsboy riding on a delivery truck with the consent of the driver, but in violation of instructions of the employer to the driver, was a trespasser to whom the company owed no duty except to refrain from acts of wanton or wilful negligence.

As this record is barren of any evidence of express authority from defendant to Boutilette to employ assistance of any kind in transporting and delivering the battery cases consigned to the storage battery company, our next inquiry is whether there is any evidence from which a jury could reasonably be permitted to find he had an implied authority so to do. "The authority to employ assistants may be either express or implied; it may be implied from the nature of the work to be performed, from the general course of conducting the business of the master by the servant, or from the circumstances of the particular case": 39 Corpus Juris, page 1271, Section 1458.

Ordinarily, however, a servant has no implied authority to employ assistants. As stated in Restatement, Agency, Section 81: "Unless otherwise agreed, a servant is not authorized to permit or employ another to perform acts of service which he is employed to perform." Thus, in *Flower v. Penna. R. R. Co.*, 69 Pa. 210, a fireman was held to have no authority to ask a ten year old boy to help him fill a locomotive and tender with water, and the railroad company was consequently not liable for the child's death when he fell under the wheels of a car.

We have here no proof of a general course of conduct, or of isolated circumstances, from which it could be inferred that the officers of defendant knew, or should have known, of Boutilette's practice of employing boys to help him unload.

*Kirk v. Showell, Fryer & Co. Inc.*, supra, [276 Pa. 587] is an example of a case in which it was held the

evidence was sufficient to require its submission to a jury upon the question of an implied authority to employ an assistant by reason of the nature of the work to be performed. There, defendant's truck driver was directed to deliver a package too large and heavy for one man to handle to the office of the American Railway Express Company; he took an assistant with him, who helped him unload the package. While the driver waited for a receipt, the assistant, in accordance with a policeman's direction, moved the truck to relieve traffic congestion and in so doing injured the plaintiff.

The principles applicable to "emergency employment" were set forth in *Byrne v. The Pittsburgh Brewing Co.*, 259 Pa. 357, 103 A. 53, where a hotel proprietor's son, at the request of defendant's driver who had left his truck and walked to the hotel, went back with the driver and rode on the truck to direct him around a short detour to the hotel, and was injured when the truck ran over an embankment. Mr. Justice STEWART discussed this situation as follows (page 361) : "It is a rule universally recognized that the relation of master and servant cannot be imposed on a person without his consent, express or implied. . . . . . The exception is that a servant may engage an assistant in the case of an emergency where he is unable to perform the work alone"; and further, at page 363, quoted with approval from *Fiesel v. The New York Edison Co.*, 123 App. Div. 676, 108 N. Y. Supp. 130, as follows: " ' . . . . . . but he must be so called as of necessity in order to make him an employee, for a servant has no authority to call on another to help him in his master's business as of necessity, unless the necessity exists. If he can do the work himself, there is no occasion of necessity to imply power in him to employ assistance.' This is simply the common law rule. At the furthest, the assistance rendered by the plaintiff in this case may be construed as serving the convenience or pleasure of the driver; but this comes far short of a necessity calling for assistance.

The emergency, as used in the rule, implies necessity for assistance. Manifestly here was no emergency."

The case just cited was followed in *D'Allesandro et al. v. Bentivoglia et al.*, 285 Pa. 72, 131 A. 592. Another illuminating case is *Tusko et ux. v. Lynett et al.*, 326 Pa. 449, 192 A. 410. In that case defendants' truck, manned by a driver and helper, was delivering bundles of newspapers to various places in the vicinity of Scranton. Thomas Tusko, a brother of a newsboy to whose stand papers were to be delivered, climbed into the rear of the truck and with the consent of the helper took the bundle of papers intended for his brother. As he emerged from the rear of the truck to cross the roadway he was struck and killed by another vehicle. In denying recovery against the owner of the newspaper truck, Mr. Justice STERN said (pages 452, 453) : "It is clear that the crew of the truck in the present case had no authority, express or implied, to employ additional assistance in the performance of their duties. Delivering the papers was not a task of a nature to require, as a necessary incident, the employment of outside help. No emergency situation existed which justified defendants' employees in enlisting the aid of this boy to deliver the papers to his brother or to place them on the engine house porch." And at page 451: "Were it conceded that the injured boy was an invitee as to the servants, he was nevertheless only a trespasser as to the master."

When the principles thus authoritatively announced are applied to the evidence in this case, it is clear that no jury should be permitted to find an implied authority, by reason of the "nature of the work to be performed," for securing the assistance of the decedent. The battery cases weighed only about twelve pounds each and it appears from the record that the consignee's employees assisted in receiving them from the truck and placing them in the plant. In the language of the case last cited, "delivering the [cases] was not a task of a nature

to require, as a necessary incident, the employment of outside help." Nor does the evidence disclose the existence of any emergency as that term has been interpreted by our Supreme Court.

Thus far we have said nothing about the fact that Boutilette paid the plaintiff's son small amounts for the assistance rendered by the latter. It seems to us that the making of these payments by the driver has, in the absence of any proof of knowledge of them by the defendant, no bearing upon the question here involved.

If the plaintiff were endeavoring to support a claim for compensation under our Workmen's Compensation Act upon the theory that her son had been employed, through the agency of Boutilette, to perform services, casual in character but in the regular course of defendant's business, the payments would be of significance, because the term "employee," as used in that statute, is synonymous with servant and includes only persons who perform services for another "for a valuable consideration." Incidentally, it is shown by the record that plaintiff, as a precautionary measure, did file a claim with the Workmen's Compensation Board on September 13, 1937, in which she included the following averment: "Common law action is pending between these parties. This petition is filed to toll the statute of limitation in the event it is adjudicated in that action that the deceased was employed by the defendant." Any issues which may arise under that petition are not now before us and we neither express nor intimate any opinion whatever with respect to any liability of the defendant under the Workmen's Compensation Act.

The fundamental issue involved in this action is whether the decedent was an invitee upon the truck of the defendant at the time of the accident. We are unable to find upon the record any evidence from which a jury could reasonably find his status, insofar as the defendant is concerned, was that of an invitee. In our

opinion, the only inference to be drawn from the evidence is that, as to the defendant, he was technically a trespasser. As there is no intimation that Boutilette was guilty of inflicting any wilful or wanton injury upon the decedent, we need not discuss the question whether there was any negligence in the manner in which the gate intended to hold the battery cases in place was fastened, or in the way in which Boutilette operated the truck. The only duty owed the decedent by defendant, through its driver, was to see that no wilful or wanton injuries were inflicted.

In the performance of the duty imposed upon us by the Act of April 22, 1905, P. L. 286, 12 PS §681, in disposing of this appeal from the entry of a judgment, n. o. v., we have reviewed the action of the court below and are of opinion that the only judgment warranted by the evidence is the one entered by that court.

Judgment affirmed.