Robert McVICAR, Plaintiff-Appellant,

v.

W. R. ARTHUR & COMPANY, Inc., Defendant-Respondent.

No. 45450.

Supreme Court of Missouri,

Division No. 2.

April 14, 1958.

Rehearing Denied May 12, 1958.

Schurr & Inman, St. Louis, for plaintiff-appellant.

Jones, Hocker, Grand, Peper, Martin, & Roudebush and Harold C. Gaebe, St. Louis, for defendant-respondent, W. R. Arthur & Co.

ELMO B. HUNTER, Special Judge.

This is an appeal by plaintiff-appellant Robert McVicar from a judgment entered in accordance with the jury's verdict in favor of defendant-respondent, W. R. Arthur & Company, Inc. On the appeal the case was originally submitted on the briefs of the parties and an opinion was written. Thereafter, defendant's motion for a rehearing was sustained and the cause was ably and fully argued to the court.

Plaintiff's petition, among other things, alleged that while plaintiff was inspecting the operation of moving and changing the cars on defendant's transport truck, "defendant, by and through its employee, carelessly and negligently pulled down the upper loading ramp of the transport truck and that as a direct result thereof, plaintiff's head was crushed between bars of said transport truck that move in the operation of said moving of the ramp" to his injury in the sum of $20,000. Defendant's answer was in the nature of a general denial, and also charged plaintiff with contributory negligence.

Many of the essential facts are undisputed. On the morning of April 29, 1953, defendant's employee-driver, Mr. Peterson, drove the transport truck east on Sarah Street, an 18 to 20 foot wide east-west paved public street, in the City of Kirkwood. He stopped the transport truck on the south side of Sarah Street so that he could unload three trucks that were being transported. Peterson testified he parked the transport truck within a foot of the south curb of Sarah Street. Plaintiff testified it was parked over toward the south curb but not against it; that it was separated from the north curb of Sarah Street by barely enough room for a car already on Sarah Street to pass. Two of the three trucks being transported were for the Rauscher Chevrolet Company. One of these two was on the bed of the trailer and the other was on the overhead ramp. The third vehicle was for a downtown St. Louis dealer.

The transport truck was eight feet wide and the top of the metal sides were about $3\frac{1}{2}$ to 4 feet high. The overhead ramp on which two of the trucks were placed was constructed so that it was necessary to raise it to load and unload the truck on the trailer bed. When so raised, the ramp was about 8 feet 6 inches above the trailer bed, and there was a ramp handle about 6 to 8 inches beyond the rear of the trailer on the end crossbar of the ramp. Apparently the rear half of the ramp was supported in a raised position by a steel bar on each side of the trailer. Each steel bar was attached to the ramp several feet from its end and to the top of the corresponding metal side of the trailer. Each bar was hinged about three-fourths of its distance from the side of the trailer to the ramp, and a heavy spring extended from the top of a steel brace, also supporting the ramp, on each side and near the center of the trailer to the point of the hinge on that side. Reference to picture exhibit D below, introduced in evidence, and which the parties agree is a fair representation of the described transport truck will clarify much of this detail. The ramp as it is shown in that exhibit is approximately half raised,

Exhibit D

On that same morning plaintiff brought his automobile to the Rauscher Chevrolet Company for servicing. The Rauscher garage fronts on Kirkwood Road. About 20 to 30 feet of space is used as a parking lot south of and between the garage and the sidewalk on Sarah Street. We proceed to give plaintiff's version as to what occurred. When the work on his car was completed plaintiff went out the side entrance which opens onto Sarah Street and endeavored to get his car out of the small parking area but could not do so because other cars were so positioned on the parking

lot as to make it impossible for him to make the necessary turn out and past the transport truck which was in his exit path. He decided to get out of his car and watch the unloading of the two vehicles still remaining on the transport truck. He first stood on the north curb of Sarah Street to watch the unloading of these two vehicles. After their unloading, one of these two vehicles was reloaded by backing it onto the lower section of the transport truck. When this truck had been backed onto the trailer bed Peterson secured it in position by a fastening or tightening operation by placing a chain or chains around the front axle and also around the rear axle of the truck and tightening the chains to a device on the trailer by a crank or handle. Plaintiff moved from the curb out into the street and leaned on the side of the transport truck with his hands resting against the upper edge of the body of the trailer portion, watching the truck driver tightening the backed-in truck to the bed of the transport truck trailer. He was about five or six feet from the rear of the truck on its left (north) side approximately at that place where the (dash)—mark appears in "ICC—18135" as shown on picture exhibit D. He conversed with Mr. Peterson who was in a crouched position about two feet away, facing northward. Plaintiff was asked,

"Q. Did you notice him looking at you at any time while you were standing there? A. Yes.

"Q. Tell us what happened after that? A. After the tightening operation was completed, the driver, Mr. Peterson, tossed the wrench over the side of the trailer truck which was right towards me.

"Q. Yes. A. And as he tossed the wrench ·it hit the bottom of the trailer. The noise attracted my attention, and I leaned in forward to see just where this wrench had gone.

"Q. What happened then? A. Well, at that time something caught my head, just passed the crown of my head, and pushed my chin down to the top edge of this side of the trailer."

On cross-examination he was asked:

"Q. Well, how close were you to those hinges when you were leaning over the first time as he was tightening this up? A. *I didn't know at that time* but since then I *understand* they were directly over my head. * * *

"Q. When you stuck your head over there, where was the driver of this truck at this time? A. He was in a crouched position tightening this truck down.

"Q. And how much of your head or how much of your body did you have leaning over in the truck at that time, if any? A. As I said, I believe my hands were in this position (indicating), and my chest was leaning against the side of the truck which would mean that anything forward of my chest would be in the truck * * * none of my chest (was ever in it) * * * (just) a comfortable position to stand * * *."

He was looking down at Peterson who was tightening a chain around the axle of the truck. Peterson "had two chains, one on each side, and I assume it would take possibly a minute or a minute and a half" for him to tighten them. He had said a few words.

"Q. After he finished tightening the chains, did you continue to watch the driver to see what he was doing? A. After he tossed the wrench, no, sir. I did not see the driver after that."

And, as stated, when he heard the noise of the wrench being tossed into the truck bed, he leaned in to watch where it went, remained in that position a matter of seconds, and was then caught between the ramp hinges and its bed. He not only did not see Peterson getting in the rear of the trailer to pull the ramp down but also did not see or hear any noise of the ramp coming down. He did not have any business

with Peterson and had not been asked to help him with his work. The only reason he looked into the trailer was to satisfy his "curiosity".

Peterson testified plaintiff had watched the whole unloading and reloading proceedings, including the unloading of the two top vehicles and the raising of the ramp to permit the unloading of the truck in the bottom. Plaintiff had walked up and down the side of the rig while watching the unloading operation. He saw plaintiff stand close to the trailer on several occasions but never saw plaintiff on or leaning over the side of or touching the trailer at any time until after the accident. Peterson did not invite plaintiff to touch or get on the trailer or ask him for any help, and plaintiff never assisted him in his work. Plaintiff had to some extent conversed with him and George Cook, an employee of Rauscher's, who was watching but not assisting in the unloading. He did not tell plaintiff to stand back, that he was going to lower the ramp. Then after chaining the front axle, Peterson took about three steps to the rear of the trailer and made use of a couple of "strips" at the rear to mount the trailer bed to reach the handle to pull the ramp down. He had to jump several inches to reach the ramp handle. He is right-handed and when he walked to the rear of the trailer, mounted it and jumped for the ramp handle his back was to plaintiff and he did not see plaintiff. This took a matter of seconds. Peterson jumped, secured hold of the ramp handle, and came down on the ground at the rear of the trailer. The first indication he had of anything wrong was the ramp hitting something and George Cook hollering. He released his hold, turned around, saw about half of plaintiff's head under the ramp hinge, and raised the ramp. The last time he saw plaintiff before the accident happened plaintiff was about one third of the way up on the left (north) side of the trailer and was standing about a foot or two from the trailer at a point

he indicated to be between two beams and approximately even with the word "other" shown in picture, exhibit A, (which would place plaintiff to the east and outside of the scissor hinge and just west of the large upright bar located approximately above the letter "S" as shown in picture exhibit D). Peterson was asked what length of time elapsed from the time he last saw plaintiff standing where Peterson said he was until Peterson grabbed the handle, and answered, "just a matter of seconds I imagine." He testified plaintiff was pinned inside the triangle, half under the hood hinge (and thus not outside the triangle portion as plaintiff had indicated).

At the close of plaintiff's case and again at the close of all the evidence defendant moved for a directed verdict for the reasons (1) That plaintiff was a trespasser on defendant's truck; (2) That defendant only owed plaintiff the duty to exercise ordinary care to prevent injury to plaintiff after plaintiff had been discovered in a position of peril; and (3) That the evidence showed that defendant had never discovered plaintiff in a position of peril prior to the happening of the accident.

On this appeal plaintiff contends that the trial court erred in giving instructions Nos. 3 and 5. Defendant contends there was no error in giving the instructions; that plaintiff was a trespasser to whom no duty was owed except to refrain from intentional injury; that plaintiff failed to make a submissible case, and that plaintiff was guilty of contributory negligence as a matter of law.

Of all these various contentions of the parties none is more fundamental than that concerning the legal status of plaintiff at the time of his injury, for it determines what duty, if any, is owed to plaintiff by defendant. We proceed to discuss that subject.

■ Missouri decisions involving this kind of issue classify individuals as tres-

passers, licensees and invitees. Wolfson **v.** Chelist, Mo.Sup., 284 S.W.2d 447. A trespasser is defined as one who enters onto the property of another without a privilege to do so created by the possessor's consent or otherwise. Thus, an adult who enters onto the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure or curiosity is a trespasser. A licensee is one who enters for his own purposes and with the permission, express or implied, of the possessor. An entrance for the entrant's own purpose distinguishes a licensee from an invitee. See 65 C.J.S. Negligence, § 23a; Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820; Twine v. Norris Grain Co., Mo.App., 226 S.W.2d 415.

■ It is often stated that the broad general rule is that the possessor of land is not liable for harm to trespassers caused by either his failure to put his land in a reasonably safe condition for their reception, or to carry on his activities so as to not endanger them. An increasing regard for human safety has led to the development of certain exceptions to this rule. These exceptions exist and are recognized in circumstances where human justice calls for an exception. Wolfson v. Chelist, supra, 284 S.W.2d loc. cit. 450. See generally, Prosser, The Law of Torts, 2nd Ed., §§ 76–77, pp. 432–452. Recognizing that although the trespasser may be a wrongdoer he is not an outlaw but is a human being, one of the exceptions is that if the presence of the trespasser is discovered, and particularly if he is in a position of peril or danger, the possessor is commonly required to exercise ordinary care under the circumstances for his safety as to any active operations the possessor may carry on. Annotation, Liability to Trespasser or Bare Licensee as Affected by Distinction between Active and Passive Negligence, 156 A.L.R. 1226. · Duty · to Seen Trespassers, 27 Harv.L.Rev. 403; McCleary,

The Liability of a Possessor of Land in Missouri to Persons Injured While on the Land, 1 Mo.L.Rev. 45; 65 C.J.S. Negligence § 24i, pp. 444–445. It has been said that a trespasser is not denied the right to recover because a trespass is a wrongful act, but because, since his presence is not to be anticipated, the property owner owes him no duty to take precautions for his safety. Annotation, supra, 156 A.L.R. 1226, 1234. Another exception is that if under certain circumstances (which we do not now define) the possessor knows that trespassers frequently intrude upon a particular place, he is required to exercise reasonable care as to activities carried on. See generally, II Restatement of The Law of Torts, §§ 333–336, page 901 ff.; Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo.Sup., 246 S.W.2d 742; Porchey **v.** Kelling, supra.

■ We have undertaken to state these fundamentals concerning trespassers and licensees, because as a general rule these same fundamentals and considerations apply where the alleged trespass is on personal property which is of such a nature that it may be the subject of a trespass, such as motor vehicles generally, trucks and wagons. See 65 C.J.S. Negligence § 24b, page 440; 4 Blashfield, Cyclopedia of Automobile Law and Practice, § 2381, page 506; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157; Stipetich v. Security Stove & Mfg. Co., Mo.App., 218 S.W. 964; Quirk v. Metropolitan St. R. Co., 200 Mo.App. 585, 210 S.W. 103; Tarasewicz v. Bowker, 5 N.J.Super. 399, 69 A.2d 350; Birmingham Ice & Cold Storage Co. v. Alley, 247 Ala. 503, 25 So.2d 37; McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492; Barry v. Stevens, 206 Mass. 78, 91 N.E. 997; Stefan v. New Process Laundry Co., 323 Pa. 373, 185 A. 734.

■ Just as the law concerning trespasses on real property underwent growth and change out of an increasing awareness of man's duty to exercise ordinary

care under the circumstances for the safety of a fellow man, the law regarding trespassers on personal property · likewise progressed. The early rule in many jurisdictions regarding trespassing on .personal property was that no duty was owed to a trespasser on personal property, such as a motor vehicle, wagon, or train, except that of refraining from wantonly or wilfully injuring the trespasser. Some courts apparently have retained this rule without recognizing an exception as to discovered trespassers subjected to an act of affirmative negligence. See Jacamino v. Harrison Motor Freight Co., 135 Pa.Super. 356, 5 A.2d 393; Faggioni v. Weiss, 99 N.J.L. 157, 122 A. 840; Beale & Strayhorn v. Clayborn, 152 Miss. 681, 120 So. 812; Spence v. Browning Motor Freight Lines, Inc., 138 W.Va. 748, 77 S.E.2d 806; Cunningham v. Bell, 149 Ohio St. 103, 77 N.E. 2d 918; Hartman v. Badger Tobacco Co., 210 Wis. 519, 246 N.W. 577; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227. Other jurisdictions advanced to the rule that after the presence of the trespasser of the vehicle is discovered and it is also discovered that he is in a position of peril, a duty then arises to use the care and caution that a reasonably prudent person would use to refrain from injuring him, i. e., ordinary care under the circumstances. See Voltz v. Orange Volunteer Fire Ass'n, Inc., 118 Conn. 307, 172 A. 220; Salemme v. Mulloy, 99 Conn. 474, 121 A. 870; Madden v. S. L. Mitchell Automobile Co., 21 Ga.App. 108, 94 S.E. 92; McGhee v. Birmingham News Co., supra. Still other jurisdictions have adopted what we believe to be the sound rule; namely, that once the owner or his servant has discovered the presence of the trespasser on or partly upon the vehicle he is under a duty to the trespasser to use ordinary care under the circumstances not to cause him injury by any affirmative act on his part.

In the recent case of Fernandez v. Consolidated Fisheries, 98 Cal.App.2d 91, 219 P.2d 73, a street sweeper endeavored to open defendant's truck door to tell the driver a package had fallen off it into the street. The truck caught and dragged him along the street, injuring him. In discussing the duty owed the court said, 219 P.2d loc. cit. 77: "This rule imposing a duty to exercise reasonable care towards known trespassers so far as affirmative acts are concerned, is in accord with the modern trend of authorities. See 38 Am.Jur., p. 771, § 109, at p. 773. Appellant contends that whatever the law may be as to the duty owed to trespassers on real property, that, as to trespassers on vehicles, the only duty is to refrain from wilful or wanton acts whether the trespasser's presence is known or not." The California court specifically rejected this argument, overruled previous cases to the contrary, and declared the rule to be that as to known trespassers on vehicles, there is a duty to use reasonable care not to harm them insofar as affirmative acts are concerned. See also, Oettinger v. Stewart, 24 Cal.2d 133, 148 P.2d 19, 156 A.L.R. 1221; Kakluskas v. Somers Motor Lines, 134 Conn. 35, 54 A.2d 592.

■ Under the undisputed facts of this case was plaintiff a trespasser at the time of his injury? It seems to us that undeniably he was. A portion of his body (his head) was partially within the space occupied by defendant's motor vehicle and through which space its hinges operated. The injury actually occurred on and partly within the vehicle. Had he not to some extent been within the vehicle at a place where its hinges operated, no injury could have resulted to him. This unauthorized presence of plaintiff or a portion of him within defendant's property under such circumstances constitute him in our judgment to be a trespasser.

■ Was plaintiff a discovered trespasser so as to impose a duty on defendant through its driver to use ordinary care, which duty was breached? This question essentially involves the submissibility of

plaintiff's case. As is our duty, we review the evidence in the light most favorable to plaintiff, according to him the benefit of all favorable inferences reasonably arising therefrom, and we disregard that which is helpful to defendant on this issue. Thus, we disregard defendant's testimony that Peterson at no time saw plaintiff touch or lean within the carrier truck or ever get closer than two feet to the truck. According to plaintiff's testimony, he was standing in the public street watching Peterson tightening the truck to the bed of the transport trailer and leaned on the side of the transport truck with his hands resting against the upper edge of the body of the trailer. He didn't know then if any of his body was within the transport truck area but gave it as his conclusion that as he leaned there, anything forward of his chest would be in the truck; that none of his chest was in it, "just a comfortable position to stand." It was when he heard the noise of the wrench being tossed into the truck bed that he *leaned in* to watch where it went and remained in that position several seconds until injured. Plaintiff did not see Peterson after he tossed the wrench and is thus unable to say and did not say that Peterson saw him lean in.

 What is the effect, if any, of plaintiff's testimony that he touched the trailer with his hands and possibly his chest as he was there in "a comfortable position to stand" observing Peterson tightening the backed-up truck to the trailer bed? Ordinarily a person who observes an adult trespasser in a place of safety is entitled to assume he will remain in a safe place, and is not required to anticipate that the trespasser will suddenly, unexpectedly or negligently go into a position of danger. See 65 C.J.S. Negligence § 24j, p. 445, and § 24g, pp. 443–444. This is but an application of the rule that no one is bound to anticipate, guard against, or take measures to avert that which, under the circumstances, a reasonably prudent person would not anticipate as likely to happen. Mischief which no reasonable person would have anticipated cannot be taken into account as a basis upon which to predicate a wrong in the law of negligence. 38 Am.Jur., Negligence, § 24, page 669. It has been stated in various ways in different authorities, and while we do not necessarily subscribe to the statements themselves, we do acknowledge the trend and gist of each; namely, that even as to discovered trespassers the duty of ordinary care not to injure by an affirmative act does not generally include anticipation that the adult trespasser will go from a safe area or place into an unsafe one where he will be subject to injury by some activity of the possessor, and that there must be some knowledge on the part of the possessor that alerts him or should alert him to that danger. We refer to a few to illustrate. "Where a trespasser is actually discovered in a position or situation of peril, there is a duty to exercise ordinary care to avoid injuring him, which duty may be breached either by active conduct or by omission to act." 65 C.J.S. Negligence § 24i, pp. 444–445. "The operator or owner of a motor vehicle is under no duty toward trespassers thereon, except that of refraining from wanton or wilful injury to them, and, in case the driver knows of the trespasser's presence and that he is in a position of peril, to use the care and caution that a reasonably prudent person would use under the circumstances to refrain from injuring him." 4 Blashfield, Cyclopedia of Automobile Law and Practice, § 2381, page 506. One's duty to a discovered trespasser is the same as to any person rightfully on the premises "after he has discovered that the trespasser is imperiled by such activity. In other words, the owner or occupant owes the duty to use ordinary care or reasonable care not to injure a trespasser whom he knows, or reasonably should know, to be in danger, by any affirmative act or force set in motion." 38 Am.Jur., Negligence, § 111, page 775. "The great majority (of courts) have discarded 'wilful or wanton' entirely as a limitation, and have said outright that

once the presence of the trespasser is discovered, or the owner is otherwise notified of his danger, there is a duty to use ordinary care to avoid injuring him, as in the case of any other human being." Prosser, The Law of Torts, 2nd Edition, Chapter 15, § 76 page 436.

We refer to several decisions of this state. In Bobos v. Krey Packing Co., supra, defendant's driver operating a motor truck on the public street permitted plaintiff to get on, but started the truck forward with a sudden, violent motion before the boy had full opportunity to complete the act of boarding the truck. This Court cited and quoted with approval from the opinion in the somewhat similar case of Stipetich v. Security Stove & Mfg. Co., supra, 218 S.W. loc. cit. 967: "His invitation to ride was an act beyond the scope of his authority, and hence, as to the driver's employer, the boy was in law a trespasser, or occupied that status. But, even so, the driver in the subsequent prosecution of his master's business owed the boy the duty of using reasonable care not to injure him after he was discovered and known to be in a place of imminent danger or peril." In Quirk v. Metropolitan St. R. Co., supra, involving a seven year old discovered trespasser on a railroad car, the court said, 210 S.W. loc. cit. 105: "Having had actual knowledge of the impending danger to plaintiff, and having failed to take means to prevent his injury after knowing that he was in a position of peril, defendant's servants were guilty of negligence, and defendant is liable." In Daniel v. Artesian Ice & Cold Storage Co., Mo.App., 45 S.W.2d 548, loc. cit. 551, the court said: "It is the law in this state that even though a person be a trespasser, yet if the defendant's servant actually knows that he is in a perilous position, and with that knowledge negligently injures him, the servant will be regarded as having acted with utter disregard for the safety of the injured person, and the master will be liable." See also Brill v. Eddy, 115 Mo. 596, 22 S.W. 488; Quirk v. Metropolitan St. R. Co., supra.

As we view it, the touching of the side of the transport truck by plaintiff is trivial and not connected with plaintiff's injury. It did not serve to alert Peterson to anticipate that plaintiff might thereafter, and while he was not looking, suddenly place his head into the vehicle at a point of danger and hold it there while Peterson was lowering the ramp. Compare Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045, where with regard to a licensee we said: " * * * it has been well held that his license does not give him the right to roam at will, without further invitation * * * to find what his prying eye may search out there; * * *", and see Wyatt v. Kansas City Terminal Ry. Co., 229 Mo.App. 179, 74 S.W.2d 51, 57; 2 Restatement of the Law of Torts, § 336, pp. 911–12; 27 Harv.L.Rev. 403, 409, Duty To Seen Trespassers. The evidence does not disclose that Peterson ever saw plaintiff within the area occupied by the trailer in any position of danger. He had no information of the likelihood of such event. Neither in fact nor fiction of law in the field of negligence is one charged with knowledge not possessed and which he is not in any sense in the wrong for not possessing. Peterson neither knew nor as a reasonable person under the circumstances of this case should he be held to know that plaintiff might trespass into a place of danger.

Nor can we characterize this latter act of trespass by plaintiff as trivial or purely technical, and as not having any bearing in determining what duty defendant owed plaintiff. It occurred after plaintiff watched Peterson finish tightening the last loaded truck onto the ramp, move away and discard his tightening tool. It was then from a motive of curiosity that plaintiff leaned in the truck and was injured by the lowered bar. It was this act of trespass that placed him in a position of danger. It was there that he was injured. There was a direct causal relation between it and the resultant injury.

There will always be close cases which severely test any rule; hence litigation, disagreeing juries and dissenting opinions. The instant case admittedly presents a close question concerning submissibility. Yet in our final analysis we can but conclude that plaintiff has failed to present facts from which a jury composed of reasonable men could find that defendant through its servant, Peterson, breached any duty of ordinary care which it owed to plaintiff. As stated, Peterson neither knew nor as a reasonable person under the circumstances presented here should he be held to know that plaintiff might or had trespassed into a place of danger where he was subject to personal injury on the lowering of the ramp by Peterson as he was preparing to leave. Therefore, there was no breach of duty and hence no liability.

Having reached this result no purpose would be served in reviewing the other contentions of the parties.

For the reasons given above, the judgment is affirmed. It is so ordered.

STORCKMAN, P. J., concurs.

LEEDY, J., not sitting.

EAGER, Judge (concurring in result only).

I feel that this case may be decided much more simply upon the question of plaintiff's negligence; his negligence was pleaded by defendant, and the question is briefed here as one determinative of the case. This may, in my opinion, be properly adjudicated without the necessity of deciding: (a) whether plaintiff was a trespasser; or (b) whether defendant was negligent. It is my view that the plaintiff was negligent as a matter of law, and that his negligence was, in any event, either the sole cause of his injury or it was negligence directly contributing to the injury. In either event, it bars any recovery. It seems probable to me that the present opinion unnecessarily extends and expands the Missouri doctrine of liability to trespassers when such discussion is not necessary to a determination of this case.