Argued February 10, reversed February 24, 1960

# STUHR *v.* BERKHEIMER CO.
### 349 P. 2d 665

*Jarvis B. Black,* Portland, argued the cause for appellant. With him on the briefs were Phillips, Coughlin, Buell & Phillips, Portland.

*Clifford B. Olsen,* Portland, argued the cause for respondent. With him on the brief were Anderson & Franklin and William F. Thomsen, Portland.

Before McALLISTER, Chief Justice, and LUSK, SLOAN and DUNCAN, Justices.

DUNCAN, J. (Pro Tempore)

Defendant appealed from a judgment of $7,500 entered February 19, 1958, in favor of plaintiff against defendant after trial by jury in the circuit court for Multnomah county, on account of personal injuries allegedly resulting from defendant's negligence.

Briefly, the facts reveal that on November 30, 1954, plaintiff, a roofing contractor, backed and parked his truck adjacent to and about flush against the warehouse loading dock of defendant for the purpose of loading on the truck crushed gravel known as aggregate, contained in paper sacks of about 60 pounds each. Plaintiff had previously dealt with defendant at this location. Whether the truck was parked on property owned or controlled by defendant does not appear. The sacks were stacked on defendant's dock by its employees and were placed in the truck by plaintiff. As stacked on the dock, some portions of the sacks extended over the end of the truck to facilitate loading. A pallet is a portable platform approximately three feet wide, four feet long, and six inches high on which the sacks were piled. The fork of the lift was inserted under the pallet and raised

the load for transportation to the dock and deposited it as stated at the rear of the truck for loading.

Plaintiff alleged that one or more sacks were broken, so that aggregate spilled onto the truck bed; that when he attempted to "step" from the dock to the truck bed, his foot was caused to slip on the spilled aggregate, causing him to fall and suffer injuries. In brief, the alleged negligence of defendant was: (1) in spilling the aggregate on the truck bed; (2) in failing to warn plaintiff of the presence of the spilled aggregate on the truck; (3) in failing to clean up the spilled aggregate; and (4) in attempting to deliver to plaintiff broken and leaking sacks of aggregate. Defendant denied all negligence and alleged contributory negligence on plaintiff's part in jumping or vaulting into the truck, and in failing to keep a lookout for his own safety. Plaintiff denied this. Plaintiff did not allege that defendant knew, or in the exercise of reasonable diligence should have known, that any of the sacks were broken or leaking or that any aggregate was spilled on the truck bed.

Defendant sets forth eight assignments of error, including the trial court's refusal to allow defendant's motion for nonsuit and subsequent motion for directed verdict in its favor; refusal to instruct the jury to return its verdict in defendant's favor, and refusal to instruct the jury to disregard each and all the allegations of negligence against defendant. The motions for nonsuit and directed verdict were based on the ground of plaintiff's contributory negligence.

■ A resume of the evidence will aid in a consideration of the charges of negligence.

Plaintiff had loaded a number of sacks and then went to defendant's office on the dock to sign papers.

His testimony on direct examination of what occurred as he returned to the truck was as follows:

"Q  And what did you do when you came back to the truck?

"A  Well, I was jogging up the ramp, it is kind of uphill, I was just kind of jogging maybe; I got to the truck and I put my hand on the side of the truck—

"Q  Which hand did you put on the side of the truck?

"A  My right hand.

"Q  Go ahead.

"A  And my left hand on the—these bags; there was just a little bit of a space there, oh, probably eight or ten inches or a foot there.  I just was coming on a jog kind of, I took ahold of that and then kind of vaulted through, pushed myself through there.

"Q  Now, what happened when you pushed yourself through this opening?

"A  Well, I put my weight on both hands and took my feet up off of the—off of the dock, and as I went down onto it, why, I hit the truck bed.

"Q  You hit the truck bed?

"A  Yes.

"Q  And what happened when you hit the truck bed?

"A  Well, I seen stars right now.

"Q  Now, you can tell us what happened.

"A  My feet went out from under me and I went to the side and on my face."

Plaintiff said he lit on his feet and hit something hard and rolly like ballbearings and looked and saw a lot of white aggregate and white rock; that after he fell he could see aggregate trickling from a hole in one of the top ten bags; that there were several good-sized handfuls of aggregate in the truck bed after his fall.

Whether or not aggregate was on the truck bed prior to plaintiff's departure for the office is not clear, and the following testimony by plaintiff is all that appears on that point:

"Q   Now, after you loaded the first 32 sacks and before you had come back to the truck and had this fall, had you noticed the condition of your truck bed?

"A   Yes.

"Q   And what was the condition of it?

"A   Well, we had just put a new bed on the truck; it was a brand new bed.

"Q   Well, was there any aggregate on the bed?

"A   No, there wasn't."

Plaintiff said that he looked down as he came into the truck, but didn't see anything until he hit the truck. He testified that aggregate runs out of the bags occasionally, and that the bags are easily torn. On deposition prior to trial he said he got his foot caught, but during the trial testified he did not get his foot caught—he slipped.

Plaintiff testified that he saw Byron Luse, defendant's employee who trucked the sacks out to the dock, in the warehouse loading sacks of aggregate on the fork of the hauling lift without using a pallet. There is no evidence that this action resulted in a broken sack.

Luse testified that plaintiff jumped over the pallet that he was unloading previously and lit on the bed of the truck. Luse said that after the accident he saw about 4 or 5 handfuls of aggregate "scattered all over the truck," but he did not observe if a sack had been broken. Luse said it was usual in loading a truck to have some aggregate spilled around. Luse did not testify as to whether or not aggregate appeared on the truck bed prior to the accident.

The general rule for determining culpable negligence is stated in 65 CJS 351, Negligence § 5a, as follows:

"* * * Accordingly, the general rule is that, in order that an act or omission may be regarded as negligent, the person charged therewith must have knowledge or notice that such act or omission involved danger to another *or that there was some defect or danger in the instrumentality or property causing the injury,* or must be reasonably chargeable with such knowledge." (Emphasis supplied.)

Further, in 65 CJS 354, Negligence § 5c, it is stated:

"One is not chargeable with negligence in failing to discover and remedy a defect or danger in his property which he could not have discovered by the exercise of ordinary care."

The quotation in *Belknap v. Klaumann,* 181 Or 1, 5, 178 P2d 154, holds that one is not liable unless it appears that he had knowledge or reasonably was chargeable with knowledge that an act or omission involved danger to another. However, it is not believed that the evidence in the present case shows any act or omission on defendant's part which contributed to the accident.

Plaintiff's accident appears to have been such that a reasonably prudent person would not have anticipated its happening as likely. See *McVicar v. W. R. Arthur & Co.,* 312 SW2d 805, 65 ALR2d 785. It is deemed that the evidence shows no negligence on defendant's part, and that defendant was entitled to a directed verdict in its favor. The judgment is reversed.