DONALD E. NEAL
*vs.*
WILLIAM S. LINNELL

AND

ELEANOR NEAL
*vs.*
WILLIAM S. LINNELL

Cumberland.   Opinion, January 5, 1960.

*Grover G. Alexander,*
*Douglas P. MacVane,* for plaintiff.

*Robinson, Richardson & Leddy,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J.  These two cases arose out of an automobile accident occurring on December 6, 1957, on Deering Avenue, a public highway, in the City of Portland, Maine.

The plaintiff, Donald E. Neal, sought to recover for damages to his automobile and for consequential damages because of injuries suffered by his wife. He made no claim for personal injury to himself. Eleanor Neal sought damages for her personal injuries, suffering and permanent impairment. The two actions were tried together and the jury returned a verdict in the case of Donald E. Neal in the amount of $3,000 and for Eleanor Neal in the amount of $15,000.

The cases are before us on defendant's general motion for a new trial on the usual grounds that the verdicts are against the evidence and also because the damages are excessive.

It appears that shortly after 9:00 p.m. on the date in question, the plaintiff, Donald E. Neal, accompanied by his wife, the other plaintiff herein, as a passenger in his car, was proceeding in a general southerly direction through Woodford Square, so-called. Woodford Square is created by the intersection of Woodford Street, Forest Avenue and Deering Avenue. Traffic from the north on Forest Avenue which desires to proceed south must use Deering Avenue to Revere Street. Traffic entering the Square from the west on

Woodford Street and desiring to go south must also use Deering Avenue to Revere Street. From the northerly end of Deering Avenue to Revere Street, traffic on Deering Avenue is one way only to the south.

The plaintiff, Donald E. Neal, entered the Square from the north on Forest Avenue and the defendant entered the Square from the west on Woodford Street. The entrance of both drivers was controlled by synchronized traffic lights. It seems to be admitted that both drivers entered Deering Avenue properly upon green signals. There is a crosswalk running easterly and westerly across Deering Avenue 62 feet from the southwesterly corner formed by the intersection of Woodford Street and Deering Avenue. Another light controls traffic approaching the crosswalk. Parking of vehicles along the westerly curb of Deering Avenue from the corner to the crosswalk is prohibited.

The plaintiff, Donald E. Neal, corroborated by his wife, testified that while going at a moderate rate of speed, he observed defendant's car as it turned into Deering Avenue; that the two cars ran parallel to each other for a short distance until suddenly and without warning the defendant veered his car to the left directly into the pathway of plaintiff's automobile and stopped suddenly close to the crosswalk; and at that time plaintiff, confronted by an emergency, was unable to prevent a collision with the rear end of defendant's car. It appears that immediately after the accident, defendant's car was moved to another point on Deering Avenue close to the scene.

Donald E. Neal placed the point of collision easterly of the center line of Deering Avenue. His testimony was to the effect that immediately after the accident his car was entirely in the left or easterly lane. Deering Avenue at this point is 39 feet wide.

On the other hand, the defendant testified that after he had turned into Deering Avenue he kept his car in a course 6 or 7 feet from the westerly curb; that he stopped his car for a red light just before reaching the crosswalk and that he was hit from the rear by the car in which plaintiffs were riding; and that at the time of the collision the right side of his car was not over 6 or 7 feet from the westerly curb.

During the course of the trial, defendant's counsel, in cross examination, requested the plaintiff to designate certain places on a map which was being used as an exhibit for the defendant. Acting under these directions, plaintiff placed an "X" to indicate the point where his car was when he first noticed defendant's car. With a "Y" he indicated the location of defendant's car. Again at the request of defendant's counsel, plaintiff placed the letter "A" to designate a point where his car was when the defendant veered to the left as claimed by the plaintiffs. The letter "A" appears to be 6 or 8 feet from the crosswalk. The defendant argues very strenuously that the accident could not have happened in the manner described by the plaintiffs in the short distance between the crosswalk and the point marked "X." The defendant says this evidence, as well as the testimony relating to the alleged swerving of the car by the defendant into the pathway of plaintiffs' car in the few feet between the point marked "A" and the crosswalk is improbable, incredible and unworthy of belief.

Defendant while admitting that the record may show a conflict of testimony and that the evidence must be viewed in the light most favorable to the plaintiff, says that plaintiffs' evidence had no probative value.

We give attention first to the issue of whether or not the verdicts are supported by the evidence.

The burden of proving a verdict is manifestly wrong is on the party seeking to set such verdict aside. A verdict will

not be set aside unless so manifestly erroneous as to make it appear it was produced by prejudice, bias, or mistake of law or fact. The credibility of witnesses and the weight of their testimony is for the jury. Where evidence presented leaves only a question of fact, about which intelligent and conscientious men might differ, the Law Court will not substitute its judgment for that of the jury. The evidence in a case must be viewed in the light most favorable to the successful party.

The foregoing principles of law are so well known as to require no supporting citations.

Of course, the plaintiffs had the burden of proving that the accident was caused by the negligence of the defendant as well as proving their own due care. Moreover, a husband cannot recover for loss of the consortium of his wife or for moneys expended in her behalf, occasioned by her injuries to which his own negligence contributes. *Kimball* v. *Bauckman*, 131 Me. 14, 158 A. 694.

Now, let us look at the evidence. Plaintiffs testified that a short distance before they reached the crosswalk on Deering Avenue, the defendant veered his car into their pathway and that the collision was unavoidable. The evidence was sufficient to permit the jury to find that the collision occurred in the easterly lane. This is indicated by the position of plaintiffs' car immediately after the accident. Two police officers corroborated the plaintiff, Donald E. Neal, to the effect that his car was entirely in the left or easterly lane upon their arrival at the scene. There is no evidence that the car had been moved.

Citing *Jordan* v. *Portland Coach Company*, 150 Me. 149, 158, in which this court said: "Uncontroverted and undisputed physical facts may completely override the uncorroborated oral testimony of an interested witness which is completely inconsistent with those physical facts, and natural

and physical laws have universal application and may not be disregarded," defendant contends that the testimony adduced by the plaintiffs as to the manner in which the accident occurred is overridden by physical facts. With this contention we do not agree.

A witness is not always necessarily precluded by marks which he places upon a map. The non-professional witness very often has no conception that maps are drawn to scale and the marks upon the map are merely evidence to be considered by the jury along with, and in the light of, all the other evidence.

The defendant testified that he kept his car in a course of travel not more than 6 or 7 feet from the westerly curb of Deering Avenue and that his car was at this distance from the curb at the time of the collision. This conflict of testimony raised a straight question of fact and the evidence was such as to permit the jury to believe that the accident occurred where the plaintiffs claimed it did. It would appear that defendant's most direct course, because of his planned destination, would ordinarily have kept him in the westerly lane. If the jury accepted plaintiffs' version as to where the cars were at the time of the collision, in like manner, they were warranted in believing that the defendant had not maintained a course parallel with the westerly curb as he contended, but that he in fact steered his vehicle diagonally to the left to the point of collision. Another issue of fact arose because of the variance in the testimony concerning the existence or non-existence of a white line designating the center of Deering Avenue. A witness for the plaintiff testified that he was the one who had painted the line and that it was in existence at the time of the accident. Resolving this issue for the plaintiffs was within the prerogative of the jury and such a finding may well have had some influence when the weight of all the evidence was under consideration.

As a result of a careful study of the record, we find nothing to indicate that the jury was in any manner affected by prejudice, bias, or mistake of law or fact. We are convinced that the evidence presented left only questions of fact, about which intelligent and conscientious men might differ. We find no error in the verdict insofar as the question of liability is concerned.

We pass now to the issue raised by the defendant that the damages are excessive. In the case of Mrs. Neal, the jury returned a verdict for $15,000. The evidence discloses that she suffered a head injury. There were complaints on her part of headaches, dizziness, spots before her right eye and pain. There was evidence that the visual field of the right eye was impaired. A neuro-psychiatrist with a good background of learning and experience, testified that as a result of the head injuries suffered by Mrs. Neal, she was affected with a post concussional syndrome and he described this condition as a group of symptoms usually following head injuries, consisting of dizziness, headaches, and difficulty arising upon sudden exertion and over-exertion. He testified that this condition was permanent and would continue for the remainder of her life. Although there was conflicting testimony, this was a question of fact purely within the province of the jury. In view of the seriousness of the injuries and their permanency, we cannot say that the award was excessive.

In the case of the husband, the special damages proved amounted to about $700. There was evidence to indicate that Mrs. Neal had lost wages in the amount of approximately $700. There is nothing in the record to indicate in which verdict this loss was contained. If the amount was added to the special damages suffered by the husband, then the balance of about $1,600 must be considered as an award for loss of consortium. If the lost wages are not included in his verdict, then the amount given for loss of consortium

would amount to about $2,300. In either event, in view of the severe and the lasting injuries to his wife, as we said in *Britton* v. *Dube*, 154 Me. 319, we cannot say the verdict is excessive.

The entry in each case will be:

*Motion for new trial denied.*