IRIS LAWRENCE, P.P.A.
LESLIE LAWRENCE
*vs.*
OSKAR LARSEN

Aroostook.   Opinion, June 2, 1960.

*Bishop & Stevens,* for plaintiff.

*Scott Brown,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

CONCURRING SPECIALLY: WEBBER, J., joined by WILLIAM-SON, C. J.

TAPLEY, J. On exceptions. These actions were brought to recover for personal injuries sustained by Iris Lawrence, infant daughter of Leslie Lawrence, and for hospital and medical expenses incurred as a result of said injuries. They were tried together at the September Term, 1958 of the Superior Court, within and for the County of Aroostook. After all the evidence was in and all parties had rested, the defendant moved for directed verdicts. The motions were denied, the cases argued and, before submission to the jury, the court, upon further consideration of defendant's original motions for directed verdicts, granted them. The cases are before this court on exceptions to the directions of the verdicts.

At the time of the injury the father of the child, Leslie Lawrence, was employed by Lyle Wheeler who owned the premises occupied by Mr. Lawrence and, as part of his compensation for such employment, he was furnished a dwelling house on Mr. Wheeler's land. Mr. Wheeler planned to construct a foundation upon which to move his house occupied by Lawrence and employed Griffin Brothers to excavate preparatory to putting in the foundation. Oskar Larsen, the defendant, was employed by Mr. Wheeler to build the forms for the cellar, pour the concrete and move the dwelling onto the foundation. The concrete foundation was started and completed by the defendant between the middle of July and the latter part of July, 1956.

Mr. Lawrence occupied the dwelling with his wife and five children, the oldest being six years of age, the youngest about three months and Iris, at the time of the accident, was four years old. On the day the accident occurred Mr. and Mrs. Lawrence had gone to the County Fair and had left the children in the care and custody of a baby sitter

of the age of thirteen years who had performed that function on the average of three times a week. While the baby sitter was in charge of the children she permitted them to play in a pile of dirt close by the foundation of the cellar. While the baby sitter was in the house caring for the baby and the other four children were outdoors playing, she heard one of the children crying, whereupon she went out of doors to investigate and there she found Iris lying on the floor of the newly constructed cellar foundation. She climbed down a ladder which led from the top of the foundation to the cellar floor on the side opposite to where the child was lying, took her in her arms, carried her up the ladder and then into the house.

The foundation was by measurement 18 x 32 feet, with walls 8 inches in thickness, and with depth of approximately 6 feet. The floor of the cellar was of cement. The distance between the southerly end of the dwelling house and the northerly end of the cellar wall was approximately 10 feet. A week after the cement was poured the area was backfilled so that the top of the cellar foundation would be in some spots a foot above the ground and in others 18 inches. Mr. Larsen, the defendant, testified that after the foundation was completed he caused the forms to be removed from the cement walls, cleaned the lumber and placed it some 40 or 50 feet away from the foundation. He also testified that he warned the parents of Iris Lawrence that they should keep the children away from the cellar "so they wouldn't get hurt." After the concrete was poured, the forms were removed and the foundation permitted to go through a period of hardening. There was no fence or barricade around the cellar wall nor was the opening covered in order to keep the children from falling into the cellar should they by chance be playing on the top of the cellar walls. The defendant did not perform the work of moving the house onto the foundation as he was not equipped to do

such work. The accident happened about two weeks after the foundation had been constructed. Mr. Larsen further testified that it was part of his obligation to Mr. Wheeler, the owner of the premises, to engage someone to move the house, which he did by hiring a sub-contractor.

The question presented here is whether under the circumstances of this case there is sufficient evidence for jury presentation in order that they might determine negligence or lack of negligence on the part of the defendant.

Counsel for the defendant contends that the plaintiff has failed to prove a necessary element of her case, viz.: there is not sufficient evidence to establish by a preponderance of the evidence that she fell into the cellar. Plaintiff's declaration says in part:

> "And as a result of the aforesaid negligent acts of the defendant, by his duly authorized agents and employees the said Iris Lawrence, while lawfully on said premises and while exercising due care and caution, and being wholly unaware of the unsafe, dangerous and hazardous condition of the cellar excavation; and being unable to ascertain with all due diligence the unsafe, dangerous and hazardous condition of the said cellar excavation; fell into the said cellar excavation then and there having a depth of seven feet, and that by reason of the said Iris Lawrence's fall as aforesaid, ------."

thus the plaintiff alleges a *fall* into the cellar and this, being an essential allegation, must be proven. What proof then was adduced by the plaintiff to support this allegation? The only testimony bearing on this subject was that of the baby sitter, Pamela Fox, when she testified:

"Q. Did anything attract your attention about supper time?

A. Yes, that is when Iris fell in.

Q. Where were you at that time, in the house or out of the house?

A.  In the house.

Q.  Were any of the children in the house with you at that time?

A.  The baby.

Q.  The other four children were outdoors playing?

A.  Yes.

Q.  Tell the jury what you heard?

A.  I either heard when she fell and she was crying or someone came in and told me, I can't remember.

Q.  Did you hear any noise outdoors?

A.  I can't remember.

Q.  You say you heard some crying?

A.  Yes, I heard her cry.

Q.  What did you do?

A.  I went out.

Q.  What did you see when you got out there?

A.  She was laying on the cellar floor.

Q.  Now were there any walls or barriers up around this foundation wall?

A.  No.

Q.  In other words, it was all open?

A.  Yes.

Q.  After you saw her laying down what did you do?

A.  I climbed down the ladder and carrier her up.

Q.  You say there was a ladder down into the cellar?

A.  Yes.

Q.  Where was the ladder in relation to where Iris was laying?

A.  She was laying near the other end where the ladder was. She wasn't laying where the ladder was but the other end of the cellar.

Q. She was lying on one end and the ladder was on the other?

A. Yes.

Q. Was she lying close to the wall?

A. Yes she was.

Q. Where were the other three children?

A. They were playing.

Q. How did you get Iris out of the cellar?

A. I carried her up the ladder."

This testimony of the baby sitter comprises all of the evidence in the case upon which the jury would be asked to make a factual determination that the child *fell* into the cellar. Is the nature and the quality of this evidence sufficient to support a jury finding of the fact? We think not. A finding based on this evidence must be one of conjecture, guesswork or even imagination. Under the evidence submitted it would be possible that the child was pushed by her playmates into the cellar or that she of her own volition descended into it by means of a ladder and while playing about the floor fell and sustained the injury. There is no direct evidence of a fall. Can the circumstance of the child being found on the cellar floor near the wall be sufficient upon which to base an inference that she fell into that position?

The case of *Mosher* v. *Inhabitants of Smithfield,* 84 Me. 334 is an action sounding in negligence wherein the plaintiff sued the Inhabitants of the Town of Smithfield to recover damages for personal injuries sustained when she was riding in a horse-drawn vehicle and was thrown from the vehicle when the horse fell in crossing a town bridge. The plaintiff alleged a defect in the bridge consisting of a hole and averred that the defect caused the fall of the horse. There was no direct testimony that the falling of the horse was caused by the defect in the bridge. The plaintiff was

the only witness. She testified, in substance, that after the horse was on the bridge he pitched forward and that was the last she knew. The court said on page 337:

> "And where different inferences are deducible from the same facts which appear, and are equally consistent with those facts, it cannot be said that the plaintiff has maintained the proposition upon which alone she would be entitled to recover. -----.

> "------------ How did this accident happen? No reason is assigned other than from inference. Nobody testifies that the horse went into the hole. The driver is not produced to testify to his manner of driving. For aught that appears, he may not have controlled the horse at all, or tried to do so. We do not know what he did or whether he did anything, — or whether he saw the hole or not.

> "There is evidence in the case that there was the appearance of a horse having fallen in the road just before entering upon the bridge. Two witnesses testify to this, and to finding a small strap in the road at that point, a short time after the accident. The plaintiff says the horse fell upon the bridge. But whether the horse ever came in contact with the alleged defect, thereby causing the injuries to this plaintiff, is left to conjecture. The horse may have stumbled from some cause entirely independent of the alleged defect. The case was left, therefore, to be decided by mere inference, without facts to determine which of the inferences, was correct."

> "The enforcement of rights and obligations in a judicial proceeding, where the issue is drawn by the pleadings, depends upon the matters revealed by the evidence offered in support of the claims made by the parties. A verdict, judgment, or decree may not be based on a mere conjecture, suspicion, surmise, guess, supposition, or speculation, where there are a number of causes of any injury or different theories having different legal results,

if there is no satisfactory foundation in the testimony for a conclusion as to any one of them. The proof must establish a connection between the act charged and the injury alleged as its effect before the plaintiff can be permitted to recover. Such causal connection must rest upon a firm foundation of proof. A possible cause cannot be accepted by a jury as the operating cause unless the evidence excludes all others or shows something in the way of direct connection with the occurrence." 20 Am. Jur. — Evidence — Sec. 1178.

*Mahan* v. *Hines,* 120 Me. 371 is an action of negligence wherein the administratrix sought recovery of damages for death of her intestate. Plaintiff's intestate, being somewhat under the influence of intoxicating liquor, was a passenger on the Bangor & Aroostook Railroad from Patten to Millinocket. The train stopped because of a semaphore or block signal about a mile north of Millinocket Station, at which time the deceased made his way to the vestibule in the rear of the smoking car. He was last seen alive going into the vestibule and standing facing the vestibule door which was closed. Soon after the train started his friends went to the vestibule to look for him but he was not to be found. A brakeman, upon the arrival of the train at the Millinocket Station, notified the assistant yard master "that it was reported that a man had jumped or fallen from the train at the northerly end of the yard." Later, about a quarter of a mile from the semaphore, they found what was left of the man's body. Plaintiff's contention was that the deceased had a right to assume that he had arrived at the station when the stop was made at the semaphore and that the sudden starting of the train either threw him off or he jumped and was in some way left injured or dazed beside the track and was picked up by one of the engines going north and thus came to his death. The court, on page 378, said:

"Inferences based on mere conjecture or probabilities will not support a verdict."

"Where different inferences are deducible from the same facts and are equally consistent with those facts, it cannot be said that the plaintiff has maintained the proposition on which alone there can be recovery." *Mills* v. *Richardson,* 126 Me. 244, at page 250.

"Both are conjectures, one seemingly as plausible as the other. And either might be the truth. But conjectures are not proof. A proposition is not proved so long as the evidence furnishes ground for conjecture only, or until the evidence becomes inconsistent with the negative." *McTaggart, Admx.,* v. *Maine Central Railroad,* 100 Me. 223, at page 230.

In *Allen* v. *Maine Central Railroad Co.,* 112 Me. 480, at page 483, the court said:

"As said by the Court in Titcomb v. Powers, 108 Maine, page 349, 'To choose between two possibilities is guesswork, and not decision, unless there is something more which may lead a reasonable mind to one conclusion than the other.' There is nothing in the evidence that authorizes the conclusion that the cause of the fire was the locomotive engine of the defendant rather than the act of the Atwood boy. To choose between the two possibilities is guesswork and not decision. An examination of the evidence shows but a possibility in support of the plaintiffs' claims, and make it manifest that the verdicts cannot stand."

This court in *Edwards* v. *American Railway Express Company,* 128 Me. 470, at page 471, said:

"Mere conjecture or choice of possibilities is not proof. A proposition is not proved so long as the evidence furnishes ground for conjecture only, nor until the evidence becomes inconsistent with the negative. To choose between two possibilities

> is guess work, not decision, unless there is some-
> thing more which leads a reasoning mind to one
> conclusion rather than to the other."

Reference is made to *Coolidge, Admr.* v. *Worumbo Manu-
facturing Company,* 116 Me. 445; See *Freeport Sulphur
Company, et al.* v. *Portland Gas Light Company,* 135 Me.
408; *Ramsdell, Admx.* v. *Burke,* 140 Me. 244.

The question of whether the child fell, was pushed or in
some other manner was precipitated to the floor of the cellar
comes within these well established principles of evidence
as demonstrated by the above cited authorities and the fact
finders would be required to determine the fact by con-
jecture or guesswork and a verdict based upon these ele-
ments could not be allowed to stand. This conclusion makes
it unnecessary to determine any other question presented in
the case.

The justice below was not in error in directing a verdict
for the defendant.

*Exceptions overruled.*

CONCURRING OPINION
WEBBER, J.

We concur in the result. In our opinion, the case is gov-
erned by *Lewis* v. *Mains,* 150 Me. 75, 104 A. (2nd) 432. The
evidence does not warrant a finding that the child was at
the area of the cellar by express or implied invitation.

There is no dispute as to the essential facts which estab-
lish and limit the duty owed by the defendant. The child's
father had permission to occupy a dwelling house on his
employer's farm as one of the terms of his employment.
There was no relinquishment by the owner of his right to
enter upon a portion of the land area adjacent to the dwell-
ing house and take exclusive control of that area for his
own reasonable purposes. When the owner entered to build
a new cellar and foundation wall on which to move the

dwelling house, that action constituted a withdrawal of any implied invitation to the employee and his family to make reasonable use of the area in question. Thereafter, since we have expressly repudiated the doctrine of "attractive nuisance" it was incumbent upon the plaintiffs, claiming damages suffered in the area thus set aside, to show wanton, wilful or reckless acts of negligence in order to ground recovery. Of such there is no evidence. We treat the defendant contractor as owing no greater duty to the plaintiffs than did the owner for whom the defendant acted.

Williamson, C. J., joins in this opinion.