Jamie R. COGSWELL by her father and next friend, Edward F. Cogswell, and Edward F. Cogswell, Individually,

v.

**WARREN BROTHERS ROAD CO.**

Supreme Judicial Court of Maine.

May 3, 1967.

Berman, Berman, Wernick & Flaherty, by Theodore H. Kurtz and Sidney W. Wernick, Portland, for appellant.

Mahoney, Thomes, Desmond & Mahoney, by James R. Desmond and David G. Armstrong, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

MARDEN, Justice.

On appeal. The case arises from complaint by a minor plaintiff and her parent seeking to recover damages for personal injury. The complaint charges defendant with having negligently parked a flat bed trailer in a street, by virtue of which negligence plaintiff was injured. Undisputed facts establish that on the day in question the defendant, by its employees, who were to work in the vicinity, parked at about 7:30 a. m. a single axle, dual wheel, flat bed trailer, upon a public street in the City of Portland, the street and the position thereon chosen as sufficiently level as to not cause it to roll. Its position was generally parallel to the street line, with front to the north and rear to the south. It was not blocked to prevent the body from rotating on its axle. The size and weight of the vehicle is not given, but it was of such dimensions and construction as to transport a 3 ton roller used in paving. Its general character appears in a photographic exhibit. At the time of parking, there were no persons, other than the custodian of the trailer, in the area. By the circumstance of street location and land use in, the vicinity, there were in the immediate area ten dwellings, two of which were two-family homes, in which group of residences about 22 children not older than 10 years lived. There is nothing to suggest that defendant had knowledge of this child population. The place where the trailer was left was not visible from the job site. The single axle of the trailer was so positioned from the front to the rear of the flat body that upon detachment of the trailer from the towing vehicle, gravity would cause the front end to drop to and rest upon the ground. The trailer was left in that position and not under observation by defendant.

Between the time the trailer was parked and the time of the accident, which occurred about 1:00 p. m., three mothers in the neighborhood observed the trailer and the presence of children upon or near it. Due to the fact that the times overlapped during which these witnesses observed the trailer, we cannot relate their observations with exact chronology.

Witness A observed the trailer at about the time it was parked and during that morning, and on several occasions, saw children on the trailer and observed that by the children's moving from one end of the trailer to the other, it acted like a see-saw, with the single axle as the fulcrum. On the first occasion there were two children and she told them to get off. Later in the morning, she saw three children on the trailer, with the plaintiff standing "a step away" from the left side of the trailer and to the rear of the axle. She told the children to get off. She entered her home and "no more than five minutes" later she was apprised of the accident and saw the plaintiff to the rear of the trailer with the end of it across her thighs.

Witness B shortly before the accident, at a time which she places as between 1:00 p. m. and 2:30 p. m., and while enroute to a neighbor's home, saw three children, the oldest being about five years old, running on the trailer causing it to act as a seesaw, with plaintiff standing "right at the end of the trailer" or "about twelve inches away from it" and facing north. At that time the front of the trailer was on the ground.

Witness C arrived home from business errands after 12:00 noon, saw four children on the trailer, including the plaintiff, and told the plaintiff to get off, which she did. She entered her home and from windows overlooking the scene, proceeded to prepare lunch and talk with Witness A, who had come in, and during the period of ten to fifteen minutes she saw three children playing on the trailer, with the plaintiff standing by. She turned away from the window and in "split seconds," "just a matter of seconds," "two or three (seconds)" she heard a scream and saw plaintiff in a sitting position facing north

with the rear end of the trailer across her thighs.[1]

There is conflict in the testimony as to whether the trailer was trigged to prevent its rolling.

Seasonably the defense moved for a directed verdict, both at the close of plaintiff's case and at the close of the case, urging insufficient proof that the injuries of the plaintiff were the proximate result of any negligence on the part of the defendant. Rulings on these motions were reserved.

The case was submitted to the jury, with instructions that if it found that the plaintiff were a trespasser, or participant in the play on the trailer, the defendant owed her no duty except to refrain from willful, reckless or wanton conduct, but that if she were not a trespasser, or participant in the play, the defendant owed her a duty of due care, and further that if plaintiff were determined to be a trespasser, or participant in the play, there was, as a matter of law, no evidence of wanton, willful, or reckless acts of negligence and the defendant would be entitled to a verdict. Instructions requested by the plaintiff bearing upon the defendant's duty of due care, in any event, were refused. Following approximately six hours deliberation, without agreement, during which time requests by the jury for instructions on "trespassing" and "participation," the court withdrew the case from the jury and directed a verdict for the defendant, upon the ground that the jury could arrive at a conclusion as to what the child was doing at the time

of her injury, and thereby determine whether or not she was a trespasser, or trespass-participant, only by guess or speculation, which being legally impermissible, justified the direction of a verdict.

Plaintiff appeals upon five points, two of which control, (1) that direction of the verdict was error, and (2) that the instruction that the plaintiff, if a trespasser or participant, could impose liability only by showing wanton, willful or reckless negligence on the part of the defendant, was error.

Decision on the first point alone would encompass the second and would dispose adequately of the appeal, but inasmuch as the duty of care owed a trespasser on personal property in a public street has not been fixed, we shall consider point two as well,—and first.

The standard of care required of a defendant, according to the view expressed by the presiding Justice, depended upon the status of the plaintiff,—as a trespasser, or trespass-participant, or a non-trespasser, or non-trespass-participant.[2] We have hitherto had no occasion to consider whether the duty of an owner or custodian of personal property lawfully placed in an area open to the public depends upon the legal status of the injured party.

 As applied to minor plaintiffs, the first doctrine which comes to mind is that in the so-called "turn table" cases, originating in Railroad Company v. Stout (1874) 17 Wall. (U.S.) 657, 21 L.Ed. 745 and since referred to as the doctrine of the "attractive

[1.] When the trailer unattached to the towing vehicle was in equilibrium the front end rested on the ground. The photographic exhibit indicates that the greater area of the flat bed was forward of the axle. Only the joint effort and weight of the three children caused the rear end to descend. The testimony places the plaintiff pinned to the ground with the rear of the trailer across her legs. Witness A unable to lift the "down" end of the trailer required help from others to raise it to extricate the plaintiff. It is unlikely

that the children who caused the trailer to tip remained on it during plaintiff's screams. Logic suggests either that plaintiff was caught by the front end of the trailer, or the rear end did not remain across the injured girl. Such error, if error it be, does not affect the result.

[2.] After Lane v. Atlantic Works (1872) 111 Mass. 137 and Gay v. Essex Electric St. Ry. Co. (1893) 159 Mass. 238, 34 N.E. 186, 21 L.R.A. 448.

nuisance." See Annot. 36 A.L.R. 34 and supplemental annotations to and including 3 A.L.R.2d 758. Some jurisdictions hold that the nature of an installation or equipment on a person's land may so attract children that they are lured, impliedly invited, onto the premises and thereby assume the legal status of invitees, whereby the land owner owes them a duty of due care, as distinguished from the intruder, the trespasser, to whom is owed only a duty to refrain from wanton, willful or reckless acts of negligence.

■ Maine has refused to adopt this doctrine, as appears most recently in Lawrence v. Larson, 156 Me. 168, 163 A.2d 364, following Lewis v. Mains, 150 Me. 75, 104 A.2d 432, and previous cases. Furthermore, as to the individual, including a minor child, who enters upon real property of another without right or permission, we have declared that such person is owed only a duty to refrain from wanton, willful or reckless acts of negligence. Nelson v. Burnham & Morrill Co., 114 Me. 213, 218, 95 A. 1029, and as to personal property see Elie v. Lewiston, Augusta & Waterville Street Railway, 112 Me. 178, 91 A. 786, L.R.A.1916C, 104 (child stealing ride on moving car). The *Elie* opinion does not disclose whether the moving car was upon a public street as distinct from the railway easement, but the briefs indicate that the car was on a public street.

■ If Maine is to apply *Lewis,* supra, only to those entering without invitation the premises of another, and *Elie,* supra, only to those mounting a moving trolley car, the instruction to the jury was in error. As a matter of public policy, we are prepared to announce this ruling as applicable to trespassers to personal property in public domain. Uncontrolled and undisciplined children trespass with impunity and as a matter of policy the public should not be required substantially to assume unlimited responsibility for their safety. One who enters upon, remains upon or uses personal property of another without that other's consent or legal right so to do is a trespasser. See Williams v. J. B. Levert Land Company, Inc., La. Ct. of Appeal, 162 So.2d 53, [1, 2] 58, 1964, (certiorari denied, 245 La. 1081, 162 So.2d 574) ; and McVicar v. W. R. Arthur & Company (Mo.1958) 312 S.W.2d 805 [6], 812 [8], 813, 65 A.L.R.2d 785.

■ This declaration is but a natural extension of the law of *Lewis* and *Elie,* supra, where in *Lewis* the court said:

"Sympathy is quickly aroused by the injuries of a child, and that emotion is both natural and proper. In such a mood, courts have sometimes substituted moral or sentimental obligations for legal obligations. In so doing they tend to curtail unreasonably the proper use of property by an owner in order to confer protection upon a person wrongfully thereon. We have never imposed upon a property owner the obligation of due care to protect a trespasser even though the trespasser was a child of tender years. * * * Upon whom then does the duty devolve to protect small children from dangers which they may encounter while trespassing? Surely upon their most natural custodians and protectors, the parents. 'Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen.' * * * The legal duty of restraining children from going into unsafe places is imposed by law upon their parents, and those who stand in *loco parentis,* and is not imposed upon strangers. The natural instinct to help the helpless would induce anyone, in a position properly to do so, to restrain a child from exposing itself to danger; but to impose the duty of exercising such restraint as a legal duty upon all strangers, or upon a partic-

ular class of strangers such as the occupants of all tenements that might seem to the childish mind attractive, would prove impracticable and intolerable. The parental duty of restraint implies the parental power of correction, or of the use of preventive force."

and we here extend it. The instruction was without error.

Having made the status of the plaintiff relevant to her rights and the concomitant duty of defendant, what then of the directed verdict?

■ No citation of authority is necessary to establish the principle that in testing the propriety of a directed verdict the evidence must be viewed in the light most favorable to the party against whom the verdict is directed, and if any reasonable view of the evidence will allow recovery, the jury should act upon it.

Getting back to fundamentals, the first question is whether, so tested, there is evidence from which a reasonable person could find lack of due care on the part of defendant, if plaintiff were not a trespasser or participant, joint actor, in the trespassing play, or wanton, willful or reckless negligence on the part of defendant, if plaintiff were a trespasser or participant, joint actor, in the trespassing play. The negligence with which defendant was accused during trial, interpreting the complaint, was the act of parking the reference flat bed trailer in this public street without blocking it to prevent its action as a teeter board; and without its being under observation by defendant. There is no contention that defendant was guilty of wanton, willful or reckless negligence and no criticism has been aimed at the trial court's ruling that, as a matter of law, there was no evidence of such negligence.

■ We are faced, then, with the question of (a) whether there is evidence to warrant a jury's finding that the plaintiff was a non-trespass-participating bystander, and

(b) whether the defendant violated his duty of due care toward her. The plaintiff's conduct at the time of her injury can be determined only from the physical facts proved and from which the jury is entitled to draw all reasonable and proper inferences, Jordan v. Portland Coach Company, 150 Me. 149, 151, 107 A.2d 416. Indeed we have said that:

"Uncontroverted and undisputed physical facts may completely override the uncorroborated oral testimony * * * inconsistent with those physical facts, * * *." Neal et al. v. Linnell 156 Me. 1, 5, 157 A.2d 231, 233.

We have here no testimony to be overridden by the undisputed physical facts. It is only a question of what reasonable and proper inferences may be drawn from them. The evidence suggests only alternative conclusions.

First: That while the south (rear) end of the bed of the trailer was off the ground, plaintiff tried to get on the trailer, in the process of which the movement of the other children caused that end over which she sought to climb to descend across her legs. In this she would be a trespasser, and absent wanton, willful or reckless negligence, the defendant violated no duty to her. Absence of this degree of negligence was declared.

Second: That while plaintiff was a non-trespass-participating bystander, she was standing in such proximity to the rear of the trailer as to be within the arc of its descent, caused by the movement of the other children, and thereby stricken into the position where found and as to which there is no dispute.

For justification of such a jury finding the height of the child and the height of the rear end of the flat bed from the ground when "up" would be relevant. The photographic exhibit of the trailer is insufficiently helpful. There is nothing to suggest the proximity on the ground of

other children who might have caused her to move into a position of danger.

Third: That while the plaintiff was standing, again in the role of a bystander, a foot or more from the rear of the trailer, it rolled or was rolled toward her to a point of contact. This conjectural theory of the facts was vigorously urged by the plaintiff on the argument of the defendant's first motion for a directed verdict. In support of this factual possibility the plaintiff pointed to the evidence that a witness had observed no chocks under the wheels to prevent rolling and that the plaintiff when last observed was and for some moments had been standing in the suggested location. Children were present who could conceivably have pushed the trailer or by the violence of their "teetering" operation set it in motion.

■ Only by resolving the facts in favor of the second or third conclusion do we then reach consideration of defendant's duty, and whether in the exercise of due care, the defendant should have reasonably apprehended the use of the trailer in a way to cause injury. The case does not reach that point.

"(W)here different inferences are deducible from the same facts which appear, and are equally consistent with those facts, it cannot be said that the plaintiff has maintained the proposition upon which alone she would be entitled to recover." Mosher v. Inhabitants of Smithfield, 84 Me. 334, 337, 24 A. 876, 877.

■ The proposition upon which alone plaintiff could reach the jury was evidence warranting a conclusion that she was a nonparticipating bystander. It is equally deducible that she was a trespasser, or a participant in the trespassing play. The direction of the verdict for the defendant was correct.

Appeal denied.

DUFRESNE, Justice (dissenting).

The majority of this Court in the instant case has doomed the infant plaintiff's (plaintiff) attempt at recovery of damages from the defendant corporation because of her probable status as a trespasser upon the defendant's piece of heavy equipment parked on a public street in a residential district in the City of Portland, Maine. This little girl, only 5 years of age, possibly guilty of a technical trespass upon the teeter-board or seesaw low-bed trailer of the defendant corporation, whose conduct and that of her mother under the circumstances of this case the average jury would visualize within the range of due care, is denied as a penalty for her indiscretion all judicial relief against the defendant. Thus the defendant's obvious negligence in parking this most sensitive and attractive playground equipment in plaintiff's front yard without defendant's taking the slightest reasonable precautions for securing it against its inherent dangers to children of tender years is permitted to stand with impunity for the defendant to repeat in other areas of the State with crippling results and possibly fatal consequences to innocent and unsuspecting children in the exercise of their equal rights to the use of the highways of this State.

Because of its sensitive equilibrium, which the defendant must or should have known, this attractive seesaw crushed the plaintiff's leg when the rear thereof tipped down over the plaintiff as her 3 playmates, none over 5 years of age, concentrated their combined weight at that end of the board. This Court now says that the defendant owed the plaintiff, if she were a trespasser, only the duty to refrain from wanton, wilful or reckless acts of negligence. With this I disagree.

True, a child of tender years is guilty of a technical trespass when he enters upon, remains upon, uses or intermeddles with any personal property of another lying in or upon the highway or public domain without that other's consent or any legal right so to

do. But the child's indiscretion, even though a trespass, does not make the youthful offender an outlaw on the highway, when the defendant's dangerous instrumentality, lying in the child's path on the way, has potential attractiveness to young children to the knowledge of the defendant and the child's trespassing upon or intermeddling with it may be reasonably anticipated. Under the circumstances of this case, the defendant owed the plaintiff the duty of due care, whatever may have been the status of the plaintiff, a trespasser-participant in the play or merely a by-stander, and it was error to direct a verdict for the defendant.

In denying the application of the "attractive nuisance" doctrine, so-called, to public highway situations as distinguished from its use to permit recovery to trespassers on private land of others, the majority disregards the inherent peril to which this unblocked low-bed trailer exposed the youthful population of the area, the early age of the plaintiff, her equal rights with the defendant to be on the public way, the defendant's foreseeability of the plaintiff's technical trespass, its abusive use of the highway in garaging its equipment thereon, and the minor inconvenience it would have been put to if it had to secure its equipment against the probable danger to children of tender ages. This policy seems incongruous with the times when public authority seeks to eradicate poverty and protect the underprivileged and can only be explained on the theory that trespassing children must be punished for their trespasses by being deprived of any access to the courts of this State for a wrong which they could not appreciate and which the wrongdoer could reasonably anticipate and prevent. Uncontrolled and undisciplined industry and business because of the immunity granted by this new policy will be at liberty to cause injury to great numbers of unsuspecting children of tender years whose only relief from crippling accidents will undoubtedly be the public treasury. Even though I do subscribe to the policy

which this Court has consistently followed in rejecting the so-called "attractive nuisance" doctrine relating to trespassers upon real property of others because such has now become so imbedded into the public policy of this State that any alteration thereof should be left to the Legislature, I must respectfully dissent when this Court extends the trespass rule of feudalistic origin beyond its territorial limits of a person's private domain to each and every child trespasser upon or intermeddler with alluring and dangerous instrumentalities to which they may unnecessarily and unreasonably be exposed upon the public ways over and in which they have a right to travel or play.

Initially let me fill in the tragic scene of the plaintiff's accident with the following record data necessary for a complete and accurate understanding of all the circumstances surrounding the event. All the witnesses testified without contradiction that the intersection of Marion and Larch Streets where the accident happened was the area playground for the small fry living off these streets and had been for years. One can visualize readily the safety thereof, even though both streets were public streets, since the bulk of the traffic thereon consisted of that of the residents thereof. Indeed both streets were very narrow, with tarred surfaces barely sufficient to accommodate two vehicles, without sidewalks except for one walk on the southerly side of Marion Street from Washington Street to the intersection of Larch Street. Although Amity Road, as an access to both streets, permitted two-way traffic, Larch and Marion were one-way streets, so-called, with traffic to proceed from Amity northwesterly only on Larch Street and southwesterly only on Marion Street. Marion Street from Washington Street had a slight rise, but Larch Street from the corner of Marion to the corner of Amity was level ground, and no valid reason appears in the record why the defendant's trailer was not parked closer to the corner of Amity Road and

thus closer to the area where the defendant's employees were working. Such would have permitted easy supervision and control of any intermeddling therewith. Furthermore, no valid reason was proffered why the trailer could not have been blocked during its indefinite stay in the children's playground as it could have been without any apparent serious inconvenience or expense to the defendant. One must also realize that plaintiff's mother could not detect the presence of the trailer in the street unless she purposely came out of her home to inspect the street for safety prior to or during her child's play therein. Indeed, she only knew of the defendant's dangerous plaything in the street after the accident when it was being removed therefrom.

It is a matter of common knowledge that dwellings in residential districts as in this case located close to big industrial plants such as Nissen's Bakery with narrow streets paved only as may be necessary to permit one-way vehicular traffic, without sidewalks, are likely to be occupied by families of low income, with many children playing in the streets. The fact is that out of some ten houses in the immediate neighborhood more than 20 young children under the age of ten would use the street as their only playground. Six of them were playing in the street at the time of the accident.

All persons are supposed to know the curiosity of children and their disposition to play around and about objects of unusual appearance. It is further known to all men that very young children attracted by instinct to objects naturally alluring to them in play will satisfy their childish desires without any inhibition arising out of any technical trespass aspect involved nor on account of any moral code of right and wrong. Our Court has stated in the language of Justice Dunn that "no one may with impunity totally disregard the natural habits and the childish inclinations of boys at play to climb the door yard shade trees. Human life is short enough, and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing, would unduly restrict the confines of that memory cherished domain, and lessen life's joys both there and thereafter." He concluded that by climbing a tree,—on his father's land, it is true—a boy would not altogether remove himself from the pale of the protection of the law, as against the defendant power company which had the right to string its wires over the land. Chickering v. Lincoln County Power Company, (1919) 118 Me. 414, 108 A. 460.

To the contention that a child 5 years of age was a trespasser upon defendant's pile of timbers in the street, the Supreme Court of Wisconsin in Busse v. Rogers, (1904) 120 Wis. 443, 98 N.W. 219 at page 222, 64 L.R.A. 183, answered in this way:

"[T]he fact must also be considered that children do play in the public highways, and will doubtless continue to do so as long as child nature remains the same as it is now. The child who lags unwilling on the way to school and chases a bright-winged butterfly, or plays a game of marbles, or climbs a tempting pile of timber in the highway to play seesaw for a moment, does not thereby become an outlaw, and when injured by another's negligence he cannot be turned aside with the curt remark that he has ceased to travel, and become a trespasser, and hence can complain of no one's conduct. His natural habits and instincts must be in some way and degree recognized * * *. The child has a right in the highway. It must be recognized that he will play therein if occasion offers. Indeed, we would not have it otherwise. The man or woman who would wish to wholly stop the flow of childish spirits while on the highway, and turn the little ones into men and women before their time, must either have had no childhood of his own or must have forgotten the fact. It would not be accurate to say that the streets are made for children to play in, but it would be equally inaccurate to say that a property owner

can totally disregard the fact that children always have, and probably always will, play therein. * * * Children are liable always to be upon the public streets, and also are liable to turn aside from traveling and play or meddle with attractive things left thereon; that a reasonable man must bear this fact in mind, and hence may not negligently or wilfully place upon the street a dangerous animal or trap well calculated to arouse the admiration or curiosity of a child, and, when it has accomplished the natural result which might reasonably be expected, escape the consequences by saying that the injured child should not have yielded to his curiosity. *It is well known that there is nothing much more attractive to children than a pile of lumber or timber, especially one which affords opportunities for a seesaw.*" (Emphasis mine).

Infantile transgressions on the highway do not necessarily make a child an outlaw without the protection which the humanity of the law commonly throws around child life. The fact that the child uses the street as a playground does not remove it from the zone of duty as regards its personal safety. Kelly v. Southern Wisconsin Ry. Co., (1913), 152 Wis. 328, 140 N.W. 60, 44 L.R.A.,N.S., 487.

The placing or maintenance of a dangerous attractive instrumentality in a public highway will impose liability upon the one responsible therefor to children who trespass upon or intermeddle with it for any injury sustained by them proximately resulting from the failure of said person to use due care in securing said instrumentality against its dangerous condition or in protecting said children against danger from said instrumentality, if (a) the possessor or owner of said instrumentality knows or should know that young children using the street will be allured to it and are likely to trespass upon it or intermeddle with it; and (b) the instrumentality is one which he knows or should know and which he realizes or should realize involves an unreasonable risk of serious injury to such children; (c) the children because of their immaturity do not discover the condition or realize the risk involved in trespassing upon or intermeddling with it; and (d) the utility to the possessor or owner in maintaining such instrumentality in such dangerous condition on the highway is slight as compared to the risk to the children.

This Court, in Nelson v. Burnham & Morrill Co., (1915) 114 Me. 213, at pages 218 and 219, 95 A. 1029, at page 1032, stated several reasons why the "attractive nuisance" rule was rejected in Maine. All these reasons may be successfully disputed where support for the rejection of the rule to public highway situations is sought. To show their incongruity to our situation would unduly lengthen this opinion. But we may consider from the Court's conclusion as hereinafter quoted that the Court had in mind only the trespassing child upon the premises, land and buildings, of another. How else explain the use of the following language:

"It is an unjustifiable restraint upon the right of an owner to conduct his business as he sees fit. * * * But what logical reason is there for saying that one, young or old, who is wrongfully upon premises, can hold the owner to the expenditure of any money, or to submission to any degree of inconvenience, for his protection? We can think of none."

Of course, we need no citation of authority to disprove any possible claim of the defendant that it had an absolute right to conduct its business in the streets of Portland as it saw fit without regard to others having equal rights to use the same.

Preliminarily, let us say that the child's presence in the street and on the defendant's trailer is not negligence as a matter of law. Small children have a right to light, air and exercise and the children of the poor cannot be constantly watched by their parents. The facts and circumstances in explanation of the child's presence unattended in a place of danger are always to be

considered. No hard and fast rules as to the care of children can be laid down and the financial condition of the family, and the other cares devolving upon the parents are not to be ignored. The question of the child's due care or her mother's contributory negligence by way of imputability to the child was in this case for the jury. Grant v. Bangor Railway and Electric Co., (1912) 109 Me. 133, 83 A. 121; Hasty v. Cumberland County Power & Light Company, (1926) 125 Me. 229, 132 A. 521.

In McVicar v. W. R. Arthur & Company, (Mo.1958) 312 S.W.2d 805, cited by the majority, where the Court concluded that the plaintiff had failed to present facts from which a jury composed of reasonable men could find that the defendant had breached any duty of ordinary care which it owed to plaintiff trespasser, it is said, at page 812 of 312 S.W.2d, "that a trespasser is not denied the right to recover because a trespass is a wrongful act, but because, since his presence is not to be anticipated, the property owner owes him no duty to take precautions for his safety." Annotation, Liability to Trespasser, 156 A.L.R. 1226, 1234.

I believe that this Court should resolve the issues in this case by the application of the ordinary principles of tort law, whether the child's attraction, trespass and ensuing injury were within the range of reasonable foreseeability, and not on the basis that all child trespassers must be penalized for their indiscretions. I prefer having the jury determine whether the child's contributory negligence or comprehension of potential danger should prevent recovery. This would be more in line with the current trend of apportionment of the degrees of negligent conduct between parties recently adopted in this State under the comparative negligence doctrine.

Furthermore, a selective application of the doctrine of "attractive nuisance" in favor of child trespassers on personal property on the highway under certain circumstances would merely give recognition to the general rule that "the risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension of injury to another person, that is taken into account in determining the existence of the duty to exercise care." 38 Am.Jur., Negligence, § 24, p. 670. Such a course would be more consistent with past pronouncements of this Court in analogous factual situations.

The trespasser-outlaw theory adopted by the Massachusetts Court was exploded fully by this Court in Cobb v. Cumberland County Power & Light Company, (1918) 117 Me. 455, 104 A. 844, and in Davis v. Simpson, (1941) 138 Me. 137, 23 A.2d 320. The unregistered automobile and the unlicensed operator, even though both on the road illegally, are not placed outside the pale of the law merely because of violation of law. Why should the knowing law violator be in better position to command due care on the part of other travelers on the highway than an innocent little child who has not sufficient enlightenment and will-power because of his age and the allurement of the object to observe and respect the property rights of others in "attractive nuisances" on the highway?

In Robitaille v. Maine Central Railroad Co., (1952) 147 Me. 269, 86 A.2d 386, our Court adopted the fictitious invitation or allurement theory to camouflage plaintiffs' technical trespass on land of another to permit recovery for travelers on private property. Even though an owner of land has the right to use his land as he sees fit, and should have the right to pave avenues on his land similar to the public ways in the vicinity, yet if he surfaces and maintains his land abutting on a public highway as to indicate to the traveling public that such land is part of the highway, he impliedly invites or allures the traveler on the highway to use the same, even though such may be completely contrary to his intentions. Our Court has said that under such circumstances, the travelers so allured would not be trespassers. Why should not the same fiction apply in favor of little innocent tots

factually allured to their doom? I do believe that the same rule of foreseeability of harm should apply in one case as in the other.

Lastly, in Hatch v. Globe Laundry Co., (1934), 132 Me. 379, 171 A. 387, our Court has laid down the rule of proximate causation as follows: the independent act of a third person intervening between the wrong complained of and the injury is sufficient to break the chain of causation, unless such intervening act should have been foreseen or reasonably anticipated. The answer to the question whether or not negligence is a proximate cause of an injury may be had as a rule not by determining that the act of a third person contributing to the result does or does not intervene, but rather by deciding whether the occurrence should have been foreseen or reasonably anticipated. The negligence of a defendant is no less the proximate cause of the injury when the intervening act is that of a plaintiff trespasser rather than that of another person. Indeed, the defendant's act is exactly the same in the one case or the other. Under such circumstances, a plaintiff's bar to recovery should be tested by the rules of contributory negligence or assumption of the risk, and he should not be eased out of court on the basis of want of status or as a judicial outlaw. Justice Thaxter, in Hatch, supra, construed the Massachusetts contrary holding in Gay v. Essex Electric Street Railway Co., (1893) 159 Mass. 238, 34 N.E. 186, as such when he said: "The court held that he was a trespasser and *that no right of action accrued to him.*" (Emphasis supplied). This Court should, as it did before, completely reject the trespass rule applied in the Commonwealth of Massachusetts.

I seem to gather from the majority opinion that my Brothers favor the policy of total denial of relief in all situations to any and all trespassers upon or intermeddlers with personal property of others upon a public way for fear that any relief may burden the public generally with unlimited responsibility for the safety of children. Such is a non sequitur. The "attractive nuisance" doctrine, so-called, may be contained within the demands of justice. The rights of the children on the one side and those of industry, business and others on the other side, must be held in proper balance, but property rights should not completely sway the feelings of this Court to the undue and unnecessary injury to human values.

The inapplicability of the rule to situations where minor children steal or catch a ride upon a moving vehicle or one about to be moved, as upon street cars, ice wagons, sleighs, etc., brings to mind a well recognized exception which I wholeheartedly approve. Elie v. Lewiston, Augusta & Waterville Street Railway, (1914) 112 Me. 178, 91 A. 786. Annotations, 36 A.L.R. 34, at pages 284–287; 3 A.L.R.2d 758 at pages 767, 771, 790, and 792 §§ 6, 7, 15, and 16.

Ordinary automobiles and trucks now seen by the thousands, which are neither uncommon nor novel to young children in any area, might be considered by this court as a matter of law outside the range of objects attractive to children on the theory that the same are commonly encountered and as to those the Court might leave with the parents the responsibility to teach their children the dangers involved in intermeddling with them. The adoption of such an exception to the "attractive nuisance" rule might be considered in a case where the instrumentality was not such an unusually attractive piece of equipment as a teeter-board trailer.

This Court could very well limit its application of the doctrine as a matter of law to children under ten years of age as the great majority of cases in which it has been applied have involved children less than ten years old. See 65 C.J.S. Negligence § 29 (11).

The overwhelming majority of jurisdictions would permit recovery by the plaintiff. Tierney v. New York Dugan Bros., (1942) 288 N.Y. 16, 41 N.E.2d 161, 140 A.L.R. 534; Rine v. Morris et al., (1925) 99

W.Va. 52, 127 S.E. 908; Kelly v. Southern Wisconsin Ry. Co., (1913), 152 Wis. 328, 140 N.W. 60; Valley Planning Mill Co., v. McDaniel, (1914), 119 Ark. 139, 170 S.W. 994; Consolidated Electric Light & Power Co. v. Healy, (1902) 65 Kan. 798, 70 P. 884; Znidersich v. Minnesota Utilities Co., (1923), 155 Minn. 293, 193 N.W. 449; True & True Co., v. Woda, (1903) 201 Ill. 315, 66 N.E. 369; Spengler v. Williams, (1889), 67 Miss. 1, 6 So. 613; Campbell v. Model Steam Laundry, (1925), 190 N.C. 649, 130 S.E. 638.

The defendant corporation parked its dangerous equipment practically on plaintiff's door-step without any thought of protection to the little children of the neighborhood. It should have known of the attractiveness of its seesaw trailer for children of plaintiff's tender age and anticipated that they would play thereon with reasonable expectation of injury arising therefrom. It should have known that its obvious tempting invitation to the children would culminate in an irresistable impulse for them to play upon this mammoth toy the dangers of which they were too young to ascertain and appreciate. To deny relief under such circumstances seems to me to shackle justice beyond the breaking point. A jury should decide whether the plaintiff is barred from relief by reason of the contributory negligence of the plaintiff or by reason of her mother's fault in not supervising her daughter's activities more closely. But let us not as a matter of law permit justice to teeter to the side of the wrongdoer.

I would sustain the appeal.