**SKI STALLS, INC. et al.**

v.

**C.W. ROGERS, INC.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1983.

Decided Feb. 15, 1983.

Peter C. Fessenden (orally), Brunswick, for plaintiffs.

Fitzgerald, Donovan & Conley, Constance P. O'Neil (orally), Duane D. Fitzgerald, Bath, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

The Superior Court (Sagadahoc County) entered judgment on a directed verdict against plaintiffs, Ski Stalls, Inc., and its co-owners, H.B. Hoffman and Samuel Martin, in their breach of contract action against defendant C.W. Rogers, Inc. After directing the verdict for defendant on the breach of contract claim and discharging the jury, the presiding justice granted plaintiffs' motion, made earlier in the trial, to amend their complaint to include a claim for unjust enrichment. Later, on motion by defendant, the same justice dismissed the unjust enrichment amendment on the ground that he had made a mistake in originally granting it. Plaintiffs appeal both the adverse judgment on directed verdict and the order dismissing their unjust enrichment claim.

We sustain the appeal. Since we vacate the judgment of the Superior Court entered on the directed verdict, we need not reach the question whether the dismissal of the unjust enrichment claim was proper. On return of the case to the Superior Court for further proceedings, it will be open to plaintiffs to make, and for the court to consider, a timely motion for amendment.

This case arises out of defendant C.W. Rogers, Inc.'s sale of its retail ski equipment business, located in Bath and Brunswick, to plaintiffs under a written contract dated November 11, 1977.[1] The contract

---

1. The portions of the purchase and sale contract (which was dated November 11, 1977) relevant to this appeal read as follows:

    2. PURCHASERS agree to assume and hold the SELLER harmless from any ~~and all liability whatsoever for~~ [sic] amounts due to creditors of the "Ski Stall" and incurred by the SELLER prior to November 11, 1977 and limited to liabilities listed on the Bulk Sales Affidavit supplied under Paragraph Four.

    . . . .

    4. SELLER shall deliver to the PURCHASERS a list, which is signed and sworn to or affirmed by SELLER, of all of SELLER'S creditors, their business addresses, the amount of the claim of each creditor, and whether the claim is admitted or disputed by SELLER. The list of creditors shall include all creditors who are known to the SELLER to assert claims against him even though SELLER disputes such claims. This list shall be delivered to the PURCHASERS on or before November 22, 1977. SELLER shall also, on or before the same date, prepare and deliver to PURCHASERS a list of all business names and addresses used by SELLER during the past three years. If SELLER fails or refuses to deliver either of the above lists on the date specified, PURCHASERS may, at their option, terminate this AGREEMENT. PURCHASERS will be responsible for any costs incurred to comply with obligations placed upon them as "Transferees" under 11 M.R.S.A. § 6–101 et seq.

    5. The purchase price will be as follows:
    A. With the execution of this AGREEMENT the sum of $43,500.00 shall be paid by PURCHASERS to SELLER. That amount will be held in escrow by SELLER'S attorneys and may be placed in an interest bearing account by SELLER'S attorneys. The interest to become the property of SELLER when final payment is made under this AGREEMENT, or if this AGREEMENT is not consummated, then any interest becomes the property of the PURCHASERS.
    B. The balance of the purchase price shall be determined in the following manner and shall be paid by PURCHASERS to SELLER no later than December 2, 1977:
    An amount equal to $124,500 plus amounts on "lay away" as of November 11, 1977, plus $10,000 for fixtures, furnishings, etc., plus

provided that plaintiffs would purchase the ongoing retail business and all its assets for a total price of $152,500. The buyers were to pay that purchase price, first, by paying directly to the seller's creditors the accounts payables owed by the ski business as of November 11, 1977, and, second, by paying cash to the seller in an amount equal to the difference between $152,500 and the aggregate of those accounts payable assumed by the buyers. By paragraph 4 of the contract, the seller obligated itself to furnish to the buyers a Bulk Sales Affidavit ("Affidavit") listing all the accounts payable of the ski business as of the date of the contract. The Affidavit was to satisfy the requirements of the Bulk Sales Act, 11 M.R.S.A. § 6–104 (1964 & Supp. 1982–1983), and to quantify the part of the purchase price that the buyers would pay by discharging outstanding liabilities of the seller. Paragraph 2 of the contract limited the buyers' assumption of the seller's accounts payable to those listed in the Affidavit.

In December of 1978, the buyers commenced the present action, alleging that the seller had committed a breach of its duty under paragraph 4 of the contract by furnishing an affidavit that omitted or understated some accounts that were payable as of November 11, 1977. The complaint further alleged that the omissions and understatements totaled $10,000; that the seller had refused to pay those extra bills when they were brought to its attention; that the credit reputation of the buyers had been damaged by the seller's refusal to pay; and that as a result, in order to maintain sources of supply necessary to the operation of the business, the buyers had been compelled to pay the creditors, who were in fact creditors of the seller.

At the start of a jury trial on liability only, the parties stipulated that the sole issue to be tried was breach of contract. At the close of plaintiffs' case, the trial justice

directed a verdict for the defendant-seller on the breach of contract claim.

"[I]n testing the propriety of a directed verdict the evidence must be viewed in the light most favorable to the party against whom the verdict is directed, and if any reasonable view of the evidence will allow recovery, the jury should act upon it." *Cogswell v. Warren Brothers Road Co.,* 229 A.2d 215, 220 (Me.1967). After a careful examination of the record, we conclude that the Superior Court erred in directing a verdict against the plaintiff-buyers; from the trial evidence a jury could reasonably have found in their favor on the issue of liability on their breach of contract claim.

The existence and terms of the written contract on which this action is brought are not in dispute. Paragraph 4 of the contract obligated the seller to provide the buyers with a list of all creditors, specifying the amount owed to each. The first issue of fact in the jury trial was whether a breach of the seller's duty under that paragraph had occurred. In their testimony before the jury, one of the buyers, as well as both of the attorneys who had represented the parties during the purchase transaction, stated in at least a conclusory way that the seller's Affidavit was less than complete and accurate. The jury might have found their testimony too non-specific to be persuasive; nonetheless, we cannot say that a jury would act unreasonably if it found on this record that the seller had committed a breach of its paragraph 4 obligation.

At this point defendant argues that, even if the jury had found that the seller had failed to live up to its contractual commitment to furnish the buyers with an accurate list of all accounts payable as of November 11, 1977, plaintiffs' evidence nonetheless did not make out a *prima facie* case that any damage whatever could flow from that breach.[2] Defendant points out that para-

---

$8,000 accounts receivable, plus $10,000 good will.

From that figure will be subtracted the sum of $43,500 and a figure equal to the accounts payable determined as of November 11, 1977.

2. Since only the liability issue was being tried to the jury, plaintiffs, in order to get to the jury, needed only to prove that *some* damage flowed from defendant's breach of contract; they did not need to satisfy the requirement that "a

graph 2 of the contract limited the buyers' liability for the seller's accounts payable to those listed on the seller's affidavit and that by paragraph 5 the buyers withheld enough from the purchase price to pay all those listed accounts. The presiding justice apparently ordered judgment for the defendant-seller on that very line of reasoning. In so doing, he erred.

Plaintiffs presented evidence, which the jury might have believed, to the effect that they were compelled to pay one or more of the unlisted accounts payable, not by their assumption agreement under paragraph 2, but rather by external market forces; that the buyers as a practical matter were required to pay certain unlisted bills, which the seller rightfully owed but refused to satisfy, because otherwise their credit reputation with established supply sources would be injured. The plaintiff-buyers argue that, to the extent of such bills, they were directly damaged by the seller's breach of its agreement that the Affidavit would be complete, because they as a result paid the seller more of the purchase price in cash than they should have. To the extent of bills outstanding on November 11, 1977, that they were thus required to satisfy, the buyers paid twice for the business.

Although we hold that the presiding justice should not have taken the case from the jury, we of course express no opinion on the factual issues that must be retried. On any new trial, separate determination of liability and damages will not, in our view, contribute to an expeditious conclusion of this protracted litigation. It also must be noted that plaintiffs, to succeed on their breach of contract claim, must prove both that specifically identified unlisted accounts payable, owed by the purchased business on November 11, 1977, were in fact paid by the buyers and that the ongoing business was compelled to pay those particular accounts in order to maintain its credit standing with significant wholesale sources.

The entry must be:

Judgment for defendant vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

party who claims compensation for a wrong must establish the amount of his damages with reasonable certainty." *Lawson v. McLeod,* 152 Me. 67, 69, 123 A.2d 199, 200 (1956).